PEOPLE v ASHER

OPINION OF THE COURT

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—POLICE CONDUCT
—PREDISPOSITION OF DEFENDANT.
   The objective test of entrapment focuses on the conduct of the
   police; entrapment exists if the police act in such a way as to
   instigate or manufacture the crime, regardless of the defend-
   ant's predisposition to commit the offense.

2. CRIMINAL LAW—ENTRAPMENT—TRIAL COURT.
   Entrapment is a question to be determined by the trial court.

DISSENT BY J. H. GILLIS, P. J.

3. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—REASONABLE PER-
SON STANDARD—POLICE CONDUCT—CASE-BY-CASE DETERMINA-
TION.
   *The objective test of entrapment focuses on police conduct which
   is measured against a reasonable person, one "not ready and
   willing to commit" the crime, and entrapment exists only
   where police conduct is such that it could induce a reasonable
   person to commit the crime; it must be determined in each case
   whether the police offer is one of a reasonable* quid pro quo *for
   performance or one that is too attractive to refuse.*

4. CRIMINAL LAW—ENTRAPMENT—NEED FOR GUIDELINES—CHARACTER
WEAKNESSES—POLICE CONDUCT.
   *Clarification by the Michigan Supreme Court is needed to provide
   standards for applying the objective test of entrapment to cases
   involving persons with character weaknesses and police action
   which may prevail upon those weaknesses.*

Appeal from Wayne, Victor J. Baum, J. Submit-
ted October 8, 1975, at Detroit. (Docket No. 20898.)
Decided February 9, 1976.

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law §§ 143–145.

Patrick Asher was charged with delivery of cocaine. From an order dismissing the charge, the people appeal by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Milmet, Vecchio, Kennedy and Carnago, P. C.* (by *David P. Phillips*), for defendant.

Before: J. H. GILLIS, P. J., and BRONSON and T. M. BURNS, JJ.

T. M. BURNS, J. Defendant was charged with delivery of a controlled substance (cocaine) contrary to MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). At an evidentiary hearing, the trial court found that defendant had been entrapped into committing the offense and dismissed the case.

At the hearing, Mark Parin, an undercover narcotics officer assigned to the Michigan State Police, testified that on October 17, 1973, he was instructed to attempt to purchase cocaine from defendant. Officer Parin contacted a Kevin Wyatt, an acquaintance of defendant's, and Wyatt directed Parin to defendant's residence. Parin informed defendant that he desired to purchase $60 worth of cocaine. Parin then drove defendant and Wyatt to the City of Westland. Parin gave defendant $60, defendant left the automobile, walked out of sight of Parin and returned a few minutes later, handing Parin a newspaper packet containing a white powdery substance.

On October 22, 1973, Parin telephoned defendant and asked him to purchase more cocaine for him. Defendant called Parin back a few minutes later and told him he could not help him because his "contact" was not at home.

On October 24, 1973, Parin again contacted defendant, requesting that defendant obtain cocaine for him, this time asking for a quarter of an ounce of the substance. Defendant agreed, told Parin he would need $350, and directed the officer to pick him up. Parin met defendant and drove him to a street address in the City of Wayne. Parin waited in the car while defendant entered the house. Defendant returned a few minutes later, and directed Parin to follow him into the house, where defendant took the $350, walked out of sight of the officer, and returned shortly with a newspaper packet containing a white powdery substance.

Subsequently, Parin attempted several times to contact defendant. In November of 1973, Parin telephoned defendant and requested another quarter ounce of cocaine. Defendant advised the officer that he would check with his contact. Defendant called Parin back and informed him that his contact was making a drug purchase that afternoon and that they would be able to make a purchase after that. That afternoon, Parin went to defendant's house and defendant informed him that his contact was unable to sell the narcotics at that time. Defendant then indicated that they could make the purchase from another friend who lived in Detroit. Parin declined.

At the evidentiary hearing, Kevin Wyatt testified that at one time he had lived in the same apartment complex as defendant. Wyatt was arrested by the City of Wayne police in October of

1973, for armed robbery. The police at that time indicated to Wyatt that they wanted to get information against the defendant and that they (the police) might be able to help Wyatt if he cooperated. Wyatt agreed to set up the meeting between defendant and officer Parin.

Both Wyatt and a social worker who had worked with defendant testified that defendant was a heavy alcohol drinker and user of Valium.

Defendant testified that when approached by Wyatt about obtaining cocaine for Parin, he at first declined but when Wyatt offered to give defendant some Valium, he agreed. Defendant also testified that he did not obtain narcotics for anyone else during the period involved in this case and that he did not profit from the drug sales, doing it only for the Valium.

Based upon these facts, the trial court ruled that, under the objective test of entrapment, defendant as a matter of law had been entrapped into procuring the cocaine for the police officer. Properly examining the conduct of the police in instigating the offense rather than defendant's predisposition to commit it, the court's basis for the decision was:

1. That the government induced Wyatt, who was incarcerated and facing trial on an armed robbery charge, to cooperate with the police in obtaining cocaine from defendant.

2. That the defendant was initially unwilling to assist in obtaining the narcotic.

3. That defendant's resistance was weakened in part by the prospect of obtaining Valium from Wyatt.

4. That such inducement was improper and attributable to the police because of Wyatt's assistance.

5. That the offense was accomplished by defendant's being driven long distances by a police agent.

The trial court concluded, albeit reluctantly, that these facts, when applied to the objective test of entrapment, amounted to improper police conduct in instigating or creating the offense with which defendant was charged.

In applying the objective test of entrapment, the focus is on the conduct of the police. Regardless of the predisposition of the defendant to commit the offense, if the police acted in such a way as to instigate or manufacture the offense, entrapment exists. *People v Henley,* 54 Mich App 463; 221 NW2d 218 (1974), *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). This was the test applied by the trial court in the instant case. The trial judge heard the testimony of the witnesses and applied the proper test of entrapment. We find no error. Entrapment is a question for the trial court to decide. *People v Habel,* 53 Mich App 399; 220 NW2d 74 (1974).

Affirmed.

BRONSON, J., concurred.

J. H. GILLIS, P. J. *(dissenting).* A thoughtful and careful attempt to measure the facts of the instant case against the objective test of entrapment announced in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), reveals the insufficient development of that test. Because my brothers' opinion does not discuss the problems with the *Turner, supra,* statement of the objective test and their effect on the case at bar, I cannot join in it.

*Turner, supra,* eliminated the subjective test's emphasis on the defendant's predisposition to commit crime but retained its focus on police conduct. The *Turner* Court, quoting from Justice Stewart's dissenting opinion in *United States v Russell,* 411

US 423, 445; 93 S Ct 1637, 1649; 36 L Ed 2d 366, 381 (1973), explained the objective test as follows:

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice."

That description suggests that the propensities and character of each individual defendant are not considered under the *Turner, supra,* objective test. Instead, police conduct is measured against a reasonable person—one "not ready and willing to commit" the crime. Thus, under the *Turner* test, entrapment apparently exists only where the police conduct is of such a nature that it could induce a reasonable person to commit crime. The Michigan Court of Appeals has followed that interpretation of *Turner, supra. People v Zeegers,* 61 Mich App 546; 233 NW2d 76 (1975).

A strict reading of that interpretation might lead to anomalous results. We realize that people do not often perform gratuitous acts for others. They usually expect compensation for their efforts. Consequently, we permit police to offer compensation as an enticement to performance of illegal acts. Nevertheless, we do not condone all offers of compensation. Some are so attractive that they cannot be refused, and where such an offer weakens an individual's resistance to the point that he accepts the offer, entrapment has occurred. Thus,

in deciding whether entrapment has occurred, one must in each case determine whether the police offer has crossed the line separating an offer that is a reasonable quid pro quo for performance from one that is too attractive to refuse. If that determination is made in relation to a reasonable person standard, an offer would have to be exceedingly attractive before it would be viewed as one too attractive to refuse. That is so because a reasonable person, by definition, is an individual not "ready and willing" to commit crime. Consequently, a reasonable person's resistance to commission of crime could only be weakened by an inducement that is incredibly attractive. Thus, under the reasonable person standard, few defendants will be able to successfully invoke the entrapment defense.

That presents no difficulty in a case such as *Turner, supra,* where the police played on defendant's desire to aid a friend. That desire is an attribute common to reasonable people. Consequently, in such a case, the individual defendant, for purposes of decision of the entrapment issue, fits into the reasonable person mold. Because that type of defendant and the reasonable person have the same resistance level and are therefore affected in the same way by any offer, the reasonable person standard works no unfairness on the defendant who is, in fact, a reasonable person.

The problem arises where the particular defendant is not a reasonable person, but, instead, has some character weakness that makes him more susceptible than the reasonable person to having his resistance to commission of crime weakened by certain police offers. For example, if the defendant is physically addicted to heroin and the police offer him heroin in order to entice him into procuring

marijuana for them, the offer of heroin will probably appeal so strongly to his weakness for heroin that he will not be able to refuse to do the requested act. Accordingly, he will, in fact, have been entrapped. Yet, because a reasonable person would not be a heroin addict and therefore would not be enticed by an offer of heroin, a reasonable person would not be entrapped by that offer. Consequently, under the reasonable person standard, the heroin addict defendant, who has in fact been entrapped, would be unable to successfully raise the entrapment defense.

Because the framers of the objective test were not confronted with a defendant suffering from a character weakness, we cannot know for sure whether they intended that the reasonable person standard be applied to all defendants. Nevertheless, realistically, I must assume that the framers of that test did not intend that individuals with character weaknesses in all cases be judged under the reasonable person standard. Yet, until the Michigan Supreme Court clarifies this matter, we are left with no standards for applying the objective test to individuals having character weaknesses. Thus we do not know what types of weaknesses lend themselves to successful invocation of the entrapment defense. For example, is a defendant entrapped only where he has a physical need for a drug, or is it sufficient that he has a psychological need? In addition, we do not know whether a defendant's ability to satisfy his need without police aid is relevant to the entrapment defense. Furthermore, we do not know whether knowledge by the police of a defendant's weakness is necessary for entrapment to exist. Because we have no method for answering those questions, they must be answered on an ad hoc basis, with each person

who must decide an entrapment issue attempting, alone, to first resolve those questions and then the question that lies at the core of each entrapment case, that is—does the police offer have such an effect on defendant that his acceptance and subsequent performance of the illegal act occurs because his will is overborne rather than because he views the agreement as a reasonable quid pro quo bargain? Because judges may well differ in their answers to those questions, until standards are developed, the law of entrapment is likely to become confused and replete with inconsistencies.

The instant case presents that very problem. The trial judge's conclusion that defendant had been entrapped was based on the following findings:

1) That the government induced Wyatt, who was incarcerated and facing trial on an armed robbery charge, to cooperate with the police in obtaining cocaine from defendant.

2) That the defendant was initially unwilling to assist in obtaining the narcotic.

3) That defendant's resistance was weakened in part by the prospect of obtaining Valium from Wyatt.

4) That such inducement was improper and attributable to the police because of Wyatt's assistance.

5) That the offense was accomplished by defendant's being driven long distances by a police agent.

My brothers find no error in the trial court's conclusions. From their decision, I can only conclude that they believe a showing that defendant used Valium, the police agent apparently knew of that use and consequently offered the drug to entice defendant into procuring cocaine, and defendant accepted because his resistance was weakened by the offer, is sufficient to constitute entrapment.

I do not share their opinion, however. I do not believe that combination of facts is strong enough to support a finding of entrapment. The instant defendant made no showing of physical or even psychological need for Valium. In addition, he did not establish that his need for the drug was so strong that he could not resist the police offer. Furthermore, he did not show that the police agent was clearly aware of defendant's need for the drug and offered it in an attempt to play on that need. In short, I believe defendant failed to show that the transaction in the case at bar was anything other than a fair business deal where the acceptance of the Valium offer constituted a reasonable quid pro quo for the procurement of cocaine. Consequently, I would reverse the trial court's finding of entrapment and remand for trial.