PEOPLE v IRMA PERRY

OPINION OF THE COURT

1. DRUGS AND NARCOTICS—CRIMINAL LAW—ENTRAPMENT—OBJECTIVE
   TEST—POLICE CONDUCT.

   The objective test for entrapment, which focuses on the conduct
   of the police, is the proper test where a defendant claims
   entrapment in a narcotics charge.

2. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—POLICE CONDUCT
   —MERE OFFERING OF OPPORTUNITY—INDUCEMENT TO CRIME.

   The objective test of entrapment is concerned with the involve-
   ment of the police, and where the involvement of a police agent
   in criminal activities goes beyond the mere offering of an
   opportunity for a defendant to commit a crime, and where the
   agent's conduct is of a kind that could induce or instigate the
   commission of a crime by one not ready and willing to commit
   it, then entrapment has occurred.

3. DRUGS AND NARCOTICS—CRIMINAL LAW—ENTRAPMENT—POLICE
   AGENT—PURCHASE OF NARCOTICS.

   There is no entrapment as a matter of law where an agent for
   the police merely asks a defendant to purchase narcotics.

4. CRIMINAL LAW—ENTRAPMENT—POLICE CONDUCT—OBJECTIVE TEST.

   The conduct of a paid police informant is included in the police
   conduct which is scrutinized under the objective test of entrap-
   ment.

5. DRUGS AND NARCOTICS—CRIMINAL LAW—ENTRAPMENT—POLICE
   CONDUCT—SPECIAL RELATIONSHIP—HEROIN.

   Police conduct was not so reprehensible that a defendant's convic-
   tion for delivery of heroin must be reversed where the special
   relationship between the police informant and the defendant

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 43, 46, 47.
   Entrapment to commit offense with respect to narcotics law. 33
   ALR2d 883.
   Modern status of the law concerning entrapment to commit narcot-
   ics offense—state cases. 62 ALR3d 110.

was not created by the police or by the informant for purposes of the delivery and where there were no appeals made to the defendant's sympathies.

DISSENT BY R. M. MAHER, J.

6. DRUGS AND NARCOTICS—CRIMINAL LAW—ENTRAPMENT—CLOSE RELATIONSHIP—APPEAL AND ERROR—POLICE INFORMANT.

It was entrapment of a defendant, and the defendant's conviction on a charge of delivery of heroin should be reversed, where the police took advantage of a close, ten-year relationship with sexual involvement between the defendant and a police informant in having the informant persuade the defendant to obtain heroin for a "friend" of the informant.

Appeal from Recorder's Court of Detroit, Samuel Gardner, J. Submitted February 11, 1977, at Detroit. (Docket No. 27896.) Decided April 19, 1977.

Irma L. Perry, also known as Irma L. McKinney, was convicted of delivery of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Hoffa, Chodak and Robiner,* for defendant.

Before: M. J. KELLY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

M. J. KELLY, P. J. Defendant was convicted of delivery of heroin, MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a), following a bench trial and sentenced to three years' probation with costs of $150. Defendant appeals as of right.

Defendant's sole contention is that the trial court erred in finding no entrapment. The summary of the testimony is as follows: Defendant was asked by a police informer, DeWitt Duncan, if she knew of anyone selling drugs and, if so, to get some for a friend of his. She agreed. Defendant was attending college at the time and had known Duncan for more than 10 years. They had once been engaged, but had broken off and married other persons. Both were in the process of getting divorces, had discussed marriage, and he had proposed to her. At the same time that the events were taking place which led up to the commission of the crime, defendant and Duncan were frequenting motels and hotels. Duncan volunteered information concerning defendant to police. He then arranged for the purchase of narcotics by an undercover policewoman, Officer Gilchrist, under orders from the police.

The first meeting between defendant and Officer Gilchrist took place on August 4, 1975, at defendant's home. Duncan introduced Officer Gilchrist to defendant as "Georgeann", stating that she wanted to buy narcotics. The trio drove to an apartment building in Detroit at defendant's direction. The officer gave defendant the money. Defendant went into the building and returned to the car with a teaspoon of heroin. Although defendant did not ask for any money above the purchase price, the officer gave her $20. The officer had been advised that she would expect it. Defendant accepted the money. On August 13, 1975, the same transaction was repeated with Duncan present. During this time the officer had gone out socially with defendant. On August 21, 1975, the transaction was repeated again, without Duncan being present. The officer drove to defendant's house and then proceeded to the same apartment building

with defendant to make the purchase. The officer gave defendant $170 in prerecorded bills, telling defendant that $20 of it was for her. Defendant at no time asked for any money, but she did not refuse it either. The August 21, 1975, delivery of heroin is the subject matter of this conviction.

Prior to trial an evidentiary hearing was held on the issue of entrapment before the same judge who presided at trial. Officer Gilchrist was the only witness. The trial judge ruled that there was no entrapment based upon the objective test. The trial was a replay. Defendant waived a jury and the judge again found no entrapment as a matter of law.

The trial judge was correct in applying the objective test, which focuses on the conduct of the police. In *People v Turner,* 390 Mich 7, 19; 210 NW2d 336 (1973), the objective test was adopted. It held:

"We believe that Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423, 441–445; 93 S Ct 1637; 36 L Ed 2d 366 (1973), persuasively articulates why the objective test should be adopted in Michigan."

The Court then quoted extensively from Justice Stewart's opinion, including the following rationale of the objective test:

" 'But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the

institutional integrity of the system of federal criminal justice.' " 390 Mich at 21.

The Court in *Turner* found entrapment as a matter of law:

"The real concern in these cases [is] whether the actions of police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand." 390 Mich at 22.

The *Turner* court pointed to the fact that the undercover agent had befriended the defendant over a three-year period and had invented a story about an addict girlfriend to play on defendant's sympathies, and that defendant was not a dealer in drugs and was not dealing in heroin when the investigation began.

The problem in this case is that on the one hand defendant was merely asked if she would purchase narcotics for a friend, which she agreed to do and on the other, that the person who asked this of defendant had a special relationship with her. Case law is clear that merely asking a defendant to purchase narcotics is not entrapment as a matter of law. See *People v Fraker,* 63 Mich App 29; 233 NW2d 878 (1975). Therefore, the question becomes whether the particular relationship between Duncan, the paid police informant, and defendant coupled with the inquiry concerning narcotics was sufficient to constitute entrapment. We think not.

The issue of whether a long standing, intimate relationship, including proposals of marriage, is sufficient in itself to constitute an inducement to commit a crime is a difficult question. The police conduct under scrutiny includes the conduct of a

paid police informant, *People v Stanley,* 68 Mich App 559, 564; 243 NW2d 684 (1976); a subsequent sale of narcotics may be found to be part of a course of conduct which is the product of prior inducements. *Sherman v United States,* 356 US 369, 373–375; 78 S Ct 819; 2 L Ed 2d 848 (1958), *People v Asher,* 67 Mich App 174; 240 NW2d 749 (1976). However, we do not find the police conduct in the present case to be so reprehensible that the conviction cannot stand. The relationship between the informant and defendant was not created by the police, or by the informant for the purchase. There were no appeals made to defendant's sympathies. The requests which defendant fulfilled seem somewhat routine. The informant's conduct is unnatural but we have great difficulty fitting it into the equation. Such conduct may be reprehensible *ad hominem* but still have no particular police aspect for entrapment purposes.

Affirmed.

J. H. Gillis, J., concurred.

R. M. Maher, J. *(dissenting).* The police tactics that were used to encourage defendant to deliver heroin to the undercover agent are appalling. I must vote to reverse defendant's conviction.

Deceitful manipulation of romantic involvements and sexual attachments may be exciting devices in a James Bond adventure. Taken from the fantasy world of espionage thrillers and placed in a pathetic attempt by local police to control drug traffic, the scenario brings on horror and disgust.

The focus should be on the conduct of DeWitt Duncan. His actions, which must be attributed to the police, *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976), are much more reprehensible

than those detailed in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). When feigned friendship and fictitious stories by an undercover agent of a girlfriend in need of drugs were used to encourage a drug transaction, the Supreme Court in *Turner* found overreaching by the police. Here the police took advantage of a ten-year relationship that was much closer than the relationship abused in *Turner.* Duncan was sleeping with defendant and discussing marriage with her when he proposed that she, for the first time, take part in a drug transaction.

This Court in *People v Soper,* 57 Mich App 677; 226 NW2d 691 (1975), condemned the exploitation of a childhood friendship by an undercover agent in a plan to persuade defendant to obtain heroin. The tactics used against defendant here are much more repugnant.

Why DeWitt Duncan stooped so low to set up his lover is not answered. But I can think of no answer that would allow Duncan or the police operating with him to escape condemnation.

The Supreme Court in *Turner* looked to venerable observations about the proper role of our law enforcement agencies when it adopted the objective test for entrapment.

The *Turner* opinion, 390 Mich at 16–17, quotes Justice MARSTON's concurrence in *Saunders v People,* 38 Mich 218, 222 (1878):

"Human nature is frail enough at best, and requires no encouragement in wrong-doing. If we cannot assist another and prevent him from violating the laws of the land, we at least should abstain from any active efforts in the way of leading him into temptation."

Defendant was entrapped, and her conviction should be reversed.