PEOPLE v DUIS

1. Criminal Law—Entrapment—Objective Test—Police Conduct.

The objective test of entrapment, which has been adopted in this state, requires the trial judge to determine whether the police conduct was of such a nature that it would induce the commission of a crime by an otherwise unwilling or unready person; the propensity of the particular defendant to commit the crime is irrelevant.

2. Criminal Law—Entrapment—Police Conduct—Public Policy.

The real concern in entrapment cases is whether the actions of the police were so reprehensible under the circumstances that the Court should refuse, as a matter of public policy, to permit a conviction to stand.

3. Criminal Law—Drugs and Narcotics—Entrapment—Scrutiny of Facts—Court of Appeals—Police Conduct—Public Policy.

To find out if a defendant, charged with delivery of a controlled substance, was entrapped as a matter of law, the Court of Appeals should scrutinize the facts of the particular case and determine whether the government agent pressured the defendant into selling the controlled substance; where the entire course of police conduct was sufficiently provocative to induce a normal law-abiding citizen to commit a crime, the actions are so reprehensible that the Court of Appeals should refuse, as a matter of public policy, to permit the conviction to stand.

Appeal from Berrien, Chester J. Byrns, J. Submitted January 6, 1978, at Grand Rapids. (Docket No. 30817.) Decided March 7, 1978.

References for Points in Headnotes

[1–3] 21 Am Jur 2d, Criminal Law §§ 143–145.

25 Am Jur 2d, Drugs, Narcotics, and Poisons § 43.

Entrapment to commit offense with respect to narcotics law. 33 ALR2d 883.

Modern status of the law concerning entrapment to commit narcotics offense—state cases. 62 ALR3d 110.

Donald Duis was convicted of delivery of LSD. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John Smietanka,* Prosecuting Attorney, and *Chris W. Dunfield,* Assistant Prosecuting Attorney, for the people.

*Drew and Drew,* for defendant on appeal.

Before: D. F. WALSH, P. J., and R. M. MAHER and BEASLEY, JJ.

PER CURIAM. A jury convicted defendant of delivery of LSD, MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). He was sentenced to 2 years probation. Defendant appeals as of right.

Defendant admitted that on July 24, 1975, he delivered LSD to police officer Jan Edwards of the Berrien County Metro Narcotics Unit at Island Park in Niles, Michigan. Pursuant to a motion to dismiss on the grounds of entrapment, a *Turner* hearing was held prior to trial. After listening to testimony, the trial judge ruled that as a matter of law there had been no entrapment. The case then proceeded to trial on the sole issue of entrapment.

Tim Kelly, a police undercover agent, testified that he had arranged for the purchase of the LSD from defendant. He also testified that in 1972 he had been convicted of larceny in a building. Before July 24, 1975, while he was in jail awaiting trial on another felony charge (uttering and publishing), in lieu of posting $5,000 bond, Kelly and the Metro Narcotics Unit reached an agreement whereby Kelly was released from jail on personal recognizance in order to arrange drug arrests for the police. The police told Kelly that if he could help the Metro Narcotics Unit, they would try to get

the pending charges reduced to "no account check" and would see to it that Kelly received probation rather than a prison term.

Kelly and the defendant had, before July 24, 1975, worked together at U. S. Aviex where they frequently lunched together. The two worked side by side on the same job and defendant testified he thought they had become close friends. After defendant quit work to go to college, he and Kelly, except for meeting each other on the street, did not see each other until three weeks before July 24, 1975. At that time they spoke with each other at a mutual friend's house.

On July 24, 1975, Kelly made three visits to the house where defendant was staying and called defendant twice. Kelly did not recall if the subject of mescaline came up during the first or second visit; according to defendant, the subject arose while the two were talking during Kelly's first visit. Kelly inquired about buying some hallucinogens. Defendant replied that there were some around but that he had none for sale. When Kelly asked the defendant if he could get him some, defendant was noncommittal. Kelly returned a few hours later with the same request and defendant said no. After a third visit and two telephone calls, defendant finally agreed to procure the mescaline for Kelly as a favor.

Defendant, after locating a person who had some mescaline (which was, in fact, LSD) picked up several packets of the substance, not knowing how many Kelly wanted, and proceeded to Island Park where he was to meet Kelly.

At Island Park, Kelly introduced Officer Edwards as his cousin who wanted to buy the mescaline. Defendant received $20 from the officer, which he gave to the person from whom he ob-

tained the drugs along with the remaining packets. He made no profit on the transaction.

Before the incident in question, defendant never sold Kelly any drugs, though he was aware that Kelly used drugs. July 24 was also the first time defendant had ever arranged the purchase of drugs for anyone, *i.e.,* acted as a dealer.

At the close of the prosecution's case, the defense moved for a directed verdict of acquittal on the grounds of entrapment. The court denied the motion on the same basis that the motion to dismiss at the conclusion of the *Turner* hearing was denied.

In *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the Michigan Supreme Court adopted an objective test of entrapment, relying on the dissenting opinion of Justice Stewart in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973), which states:

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." 411 US at 445.

In *Turner* our Supreme Court stated that the real concern in entrapment cases is "whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". *Id.* at 22.

Through an examination of the facts of each case, the court must determine whether the police conduct was of such a nature that it would induce the commission of a crime by an otherwise unwilling or unready person. *People v Fraker,* 63 Mich App 29; 233 NW2d 878 (1975). The character or propensities of a particular defendant are totally irrelevant to the entrapment determination. *People v Cushman,* 65 Mich App 161; 237 NW2d 228 (1975).

To find out if defendant was, as a matter of law, entrapped, we scrutinize the facts of this particular case. The police agent who was instrumental in the sale was a convicted felon who arranged the drug arrest as part of a deal with police by which he would receive probation, not a prison term, and would be charged with an offense less serious than that with which he was originally charged. This factor is properly taken into consideration in our focus on police conduct. In *People v Asher,* 67 Mich App 174; 240 NW2d 749 (1976), the Court, in concluding that there had been entrapment, had due regard for the criminal status of the police agent.

Here we find the circumstances more reprehensible than those in *Asher.* There the police had focused their attention on a suspected narcotics dealer. The police agent was contacted while in jail because he was a friend of defendant. In the instant case, however, the police had not focused on a particular subject. The police approached Kelly because he was in a vulnerable position and because they assumed he knew and could contact drug dealers. The police did not investigate defendant to ascertain if he was a drug dealer. By failing to adequately supervise Kelly's activity, the police allowed him to select any victim he wished. The

employment of Kelly, a convicted felon, awaiting trial on yet another felony, to induce defendant to sell drugs offends decent standards of law enforcement. It is precisely the overreaching police conduct condemned in *Turner.*

In further scrutinizing the facts, we concentrate on whether the government agent pressured defendant into selling controlled substances. *People v Turner, supra, People v Henley,* 54 Mich App 463; 221 NW2d 218 (1974). Kelly visited defendant three times on the day of the sale and telephoned him twice. Kelly admitted he continued to "bug" defendant, who was not willing to accede to Kelly's entreaties, until defendant agreed to sell the mescaline. The police pressure is inexcusable. It is the kind of conduct which would reasonably be expected to induce an unwilling and unready individual to commit crime. Such police methods cannot be countenanced.

It is true that the friendship between Kelly and defendant was created independent of any police involvement. But the friendship was later cultivated and kept alive solely for the purpose of inducing defendant to sell drugs. Kelly actively exploited and abused the friendship for an obvious reason: the police promised him leniency and freedom if he arranged drug arrests. Police involvement was the very reason Kelly entrapped his friend.

Moreover, only by playing on defendant's sympathy was Kelly able to entice defendant to sell drugs. "Do it for me as a favor, brother", was Kelly's plea to defendant. While not as flagrant an action as that in *Turner,* Kelly did lie to persuade defendant to sell the drugs.

The entire course of police conduct "was sufficiently provocative to induce the normal law abid-

ing citizen to commit a crime". *People v Fraker, supra,* at 33. The actions of the police were so reprehensible that this Court must refuse, as a matter of public policy, to permit the conviction to stand. *People v Turner, supra.* Because we find defendant was entrapped as a matter of law, his conviction is reversed.