PEOPLE v WISNESKI

Docket No. 46214. Submitted November 7, 1979, at Grand Rapids.—
Decided March 18, 1980. Leave to appeal applied for.

Jerome J. Wisneski, a medical doctor, was charged with unlawful
delivery of a controlled substance, Preludin. A hearing was
held on the question of entrapment in the Kent Circuit Court,
George R. Cook, J. At the hearing it was brought out that a
former patient of defendant who had named defendant as one
of her sources of drugs had, at the request of the police, gone to
defendant's office to seek a prescription for the drug. Defendant
refused to write the requested prescription. The police agent,
who had a history of sexual contact with defendant, was wired
with a transmitter and returned to the defendant's office the
following day with specific instructions that she was not to
engage in sexual activity with the defendant "unless that's
what she had to do": Upon entering the defendant's office, the
agent was ordered by the defendant to leave. She remained in
the office on the pretext that she was there to pay her bill, and,
thereafter, after engaging in ambiguous sexual overtures to
defendant, she performed fellatio on defendant. Following this
act she again asked that defendant write a prescription for
Preludin. Defendant assented, making out the prescription in
the agent's maiden name. The trial court determined that
there was no entrapment. Defendant applied for emergency
leave to appeal and leave was granted. *Held:*

1. Michigan has adopted the objective test for entrapment. As
such, the courts must focus upon the question of whether the
police conduct is of such a nature that it is repugnant to fair
play and justice and would induce the commission of a crime by
an otherwise unwilling or unready person. Any propensity of
the particular defendant to commit the offense is to be disre-
garded.

2. The sexual conduct undertaken by the police agent with

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 143 *et seq.*

[2,4,5] 21 Am Jur 2d, Criminal Law §§ 144, 145.
  Entrapment to commit offense with respect to narcotics law. 33
  ALR2d 883.

[3] 4 Am Jur 2d, Appeal and Error § 415.

the tacit approval of the police was a reprehensible act under the circumstances. Notwithstanding the prior history of sexual contact between the defendant and the agent, under these circumstances the use of such an inducement constitutes entrapment. The sexual conduct, in view of the fact of the defendant's previous unwillingness to write the prescription, was the inducement for the criminal act rather than being merely incidental to the criminal act.

3. On the basis of the record on appeal, this Court decides, as a matter of law, that the activities of the police agent constituted entrapment and orders the defendant discharged.

Reversed.

G. E. BOWLES, J., dissented. He would hold that the activities of the police did not constitute entrapment. He would hold that the trial court's determination that there was no entrapment cannot be said to be clearly erroneous. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST — POLICE METHODS — PREDISPOSITION OF DEFENDANT.

Michigan has adopted the objective test for entrapment, which focuses on whether the police conduct is repugnant to fair play and justice and which disregards the character or propensities of a particular defendant to commit the offense; the question which the court must determine on the facts of each case is whether the police conduct was of such a nature that it would induce the commission of a crime by an otherwise unwilling or unready person.

2. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT — SEXUAL INDUCEMENT — UNWILLING PERSON.

The use of sexual favors by a police agent to induce a doctor to give to the agent a prescription for a controlled substance so that the substance could then be sold by the agent constitutes a reprehensible act amounting to entrapment where the police gave their tacit approval to the use of the sexual inducement by the agent if she found it necessary and where the doctor had evidenced an unwillingness to write the prescription prior to the sexual inducement offered by the agent, since, notwithstanding a prior sexual relationship between the agent and the doctor, the sexual activity was the inducement for the criminal act rather than being incidental to it.

3. APPEAL — CRIMINAL LAW — ENTRAPMENT — UNCONTROVERTED TESTIMONY — MATTER OF LAW.

The Court of Appeals will decide the question of entrapment as a

matter of law rather than remanding to the trial court where the defendant's testimony is taken as true or the evidence is uncontroverted.

DISSENT BY G. E. BOWLES, J.

4. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT — PRIOR RELATIONSHIP.

Entrapment must be established by showing intolerable police conduct which institutes or instigates the crime; the existence of a relationship between a police agent and the defendant prior to police involvement is a factor to be weighed in determining whether the police conduct was intolerable and offensive to public policy.

5. APPEAL — CRIMINAL LAW — ENTRAPMENT — SEXUAL INDUCEMENT — PRIOR RELATIONSHIP — APPEAL TO SYMPATHY.

A determination by a trial court that entrapment was not shown is not clearly erroneous where a police agent who had a prior history of sexual contact with a doctor engages in sexual conduct with that doctor for the purpose of securing a prescription for a controlled substance from the doctor, since there has been no showing of any appeal to the doctor's sympathy or better nature in order to induce him to write the prescription.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Kristine D. Botsford,* Assistant Prosecuting Attorney, for the people.

*Catchick & Dodge,* for defendant.

Before: V. J. BRENNAN, P.J., and BEASLEY and G. E. BOWLES,* JJ.

V. J. BRENNAN, P.J. Defendant was charged with the unlawful delivery on April 28, 1979, of a controlled substance, Preludin, in violation of MCL 333.7401(1); MSA 14.15(7401)(1). Following a *Turner*[1] hearing, the trial court denied defendant's motion for a determination of entrapment, finding

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973).

no basis for an entrapment defense. We granted defendant emergency leave to appeal this decision and stayed further proceedings in the trial court.

The sole contention raised on appeal is that the trial court erred in finding no entrapment. The testimony can be summarized as follows: Betty Jean Phillips, a patient of defendant Dr. Jerome Wisneski, first contacted the Grand Rapids Police Department when she sought help to "kick" a drug habit. Questioned by officers Goethal and Ellenbaas of the vice squad, she named Dr. Wisneski as one of her sources. At the officers' request, Phillips went to the doctor's office on April 27, 1979, to try and get a prescription for drugs. Dr. Wisneski refused to write the requested prescription and Phillips left. She returned the next day in the company of the two officers and was instructed "not to go in and do that [oral sexual contact] unless that's what she had to do". Before entering the doctor's office, she was outfitted with a tape recorder and transmitter.

The transcript of this encounter indicates that Dr. Wisneski asked her to leave and offered to bodily evict her. Although Phillips explained that she was there to pay her medical bill, she later admitted she had no money on her at the time. After making several ambiguous sexual overtures, the import of which the doctor seemed to miss, Phillips apparently made a visual gesture which he did comprehend. Thereupon, she performed oral sex on him. Only immediately after this act did she ask that the doctor write a prescription for 30 Preludin in her maiden name.

Officer Goethal testified that he instructed Phillips to do only what she would normally do when she went to the defendant's office. At a previous administrative hearing, the officer testified that

the instructions were "not to go in and do that [oral sexual contact] unless that's what she had to do".

Michigan has adopted the objective test for entrapment which focuses on police conduct rather than the individual defendant's predisposition to commit the offense. *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). The character or propensities of a particular defendant are totally irrelevant to the entrapment determination. *People v Cushman,* 65 Mich App 161; 237 NW2d 228 (1975). If the methods used by the police are repugnant to fair play and justice, the courts, in an attempt to discourage the practice and to uphold confidence in the fair and honorable administration of justice, will refuse to permit prosecution. The real concern in entrapment cases is "whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". *People v Turner, supra,* 22.

For the court to determine whether the police conduct was of such a nature that it would induce the commission of a crime by an otherwise unwilling or unready person, the facts of each case must be examined. *People v Fraker,* 63 Mich App 29; 233 NW2d 878 (1975).

Phillips testified that Dr. Wisneski refused to fill her request for a prescription on April 27, 1979. His refusal is emphasized by the doctor's patient information memorandum of that date which states:

"Patient wants 'speed' to sell—told her no way. Discouraged return for any type of prescription needs in future. She has made appointment to see Dr. Dickson in our building for today. Made offer of $50 for 15 speed."

At the officers' request, Phillips returned the next day. The recording of her subsequent encounter with Dr. Wisneski indicates a very unwilling defendant. Surprised by Phillips' visit, Dr. Wisneski variously told her to, "get out of here", "I'm a busy man", and "I may have to [bodily throw you out]". In the face of this resistance, Phillips then performed fellatio upon the doctor in order to "soften him up". Only after the doctor was so seduced did she repeat her request of the previous day for a prescription. He acceded.

There is no question that Phillips was a police agent, *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976), and thus her conduct in conjunction with that of the police must be examined to see if it was "reprehensible under the circumstances". *People v Turner, supra,* 22. We find it was.

When officers Goethal and Ellenbaas told her "not to go in and do that [engage in fellatio] unless that's what she had to do", they were tacitly encouraging her to induce the doctor to write the illegal prescription.

As a majority of the panel in *People v Cushman, supra,* 166, stated:

"The court's attention should be focused on the conduct of the police and whether that conduct has in a reprehensible manner instigated the commission of a crime by one not ready and willing to commit it— regardless of the propensities of the particular person induced."

Police encouragement of an agent's use of sex to induce one who is unwilling and unready to commit a crime constitutes entrapment. Although the relationship between Phillips and Dr. Wisneski was created independent of any police involve-

ment, *People v Duis,* 81 Mich App 698; 265 NW2d 794 (1978), it was at the direction of the police that this friendship was "kept alive solely for the purpose of inducing defendant to sell drugs". The instant case is distinguishable from *People v Irma Perry,* 75 Mich App 121; 254 NW2d 810 (1977), which most closely deals with the use of sex in entrapment. Unlike Perry, however, Dr. Wisneski initially resisted Phillips' request for an illegal prescription. And more importantly, the sexual activity here was not incidental to, but rather the inducement to the criminal transaction.

We note that the doctor's path is difficult enough without subjecting him to police conduct of this kind.

This Court possesses the authority to decide the entrapment issue as a matter of law rather than remanding the case to a trial judge when the defendant's testimony is considered as true or the evidence is uncontroverted. *People v Fraker, supra, People v Henley,* 54 Mich App 463; 221 NW2d 218 (1974), *People v Ramon,* 86 Mich App 113; 272 NW2d 124 (1978).

Reversed and defendant discharged.

BEASLEY, J. concurred.

G. E. BOWLES, J. *(dissenting).* Defendant had been the physician of Betty Jean Phillips, the chief prosecution witness, for four years. Since 1976 he had prescribed drugs for her and treated her during a hospitalization for a drug overdose. She testified that defendant was one of her drug sources and that she had received drugs from him in exchange for sexual favors.

Ms. Phillips contacted the vice squad of the Grand Rapids Police Department on April 26, 1979, because she wanted to kick her addiction to

Preludin and speed. The officers took Ms. Phillips
to defendant's office and told her to "go up there
and to do what you would normally do" and "not
to do anything out of the ordinary". Defendant did
not see her on April 27th, a Friday, but told her to
return on Saturday, April 28th when his recep-
tionist would not be working. Ms. Phillips re-
turned to defendant's office on April 28, 1979,
equipped with a recording device. At the outset
the two played what Ms. Phillips called their usual
"silly game", defendant asking her why she was
there and telling her to leave because he was too
busy to see her. She said she was there to pay her
bill and offered to pay in money. After a sugges-
tive gesture by Ms. Phillips, she participated in an
act of fellatio with defendant and, at the conclu-
sion, asked the defendant for another prescription
for Preludin. Defendant wrote her a prescription
for 30 pills. The prescription was written after Ms.
Phillips told him that she could sell them all.

The majority relies in part on defendant's nota-
tions on Ms. Phillips' patient records in reaching
its decision. However, these records are of dubious
validity. Defendant's record of Ms. Phillips' April
28th visit contains a notation that defendant ex-
tracted a promise from her that she would never
again return to his office. However, the truthful-
ness of this entry is not supported by Ms. Phillips
or, more importantly, the transcript of the record-
ing of the pair's April 28th conversation.

As the majority notes, defendant did not see Ms.
Phillips on April 27th. However, this should not be
construed as evidencing resistance on the part of
defendant to commit the illegal act. Defendant
told her to return the following day, a Saturday.
Defendant's receptionist testified that his office
hours were 9 a.m. to 3 p.m. Monday through

Friday. Rather than indicating resistance, defendant's refusal to see Ms. Phillips on April 27th may be viewed as indicative of his desire to see her alone when they could be free from interruptions.

Michigan recognizes the so-called objective test for entrapment. *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). The character or predisposition of the particular defendant is irrelevant to determining whether entrapment occurred. Central to the determination is whether the illegal conduct of the defendant was a product of police creativity. *Turner, supra,* 17. The mere fact that the actions of the police constitute the commission of a crime does not necessarily establish entrapment. There must be intolerable police conduct that institutes or instigates the crime. *People v Moore,* 73 Mich App 514, 517; 252 NW2d 507 (1977). The existence of a relationship between an informant and the defendant prior to police involvement is a factor to be weighed in determining whether the police conduct offends public policy. *People v Irma Perry,* 75 Mich App 121, 126; 254 NW2d 810 (1977).

The offense committed, delivery of a controlled substance by defendant, was not the product of the creativity of the police, nor did it result from any play on defendant's sympathies. Ms. Phillips already had an appointment for Friday, April 27, 1979, with defendant to pay for a prescription she had received on April 24th before the contact with the police on April 26, 1979. The police gave instructions for her to "do what she normally did" and "not to do anything out of the ordinary". That, in fact, is what happened; she did what she normally had done. Defendant gave her Preludin in exchange for sex.

Significantly, the tape recording of the April 28th conversation shows that defendant and Ms.

Phillips played a game, defendant pretending that he wanted her to leave. Further, before the sexual act Ms. Phillips offered to pay her bill in money and defendant did not accept it. When he gave her the 30 Preludin pills he knew that she was going to sell "every one".

Ms. Phillips did not play on defendant's sympathy. The pills were not for her own use, but rather, were for resale. Under current case law, before an appeal to sympathy can constitute entrapment, it must be shown that the appeal was to human emotions and motivations which can be characterized as arising for man's better nature. An offer to satisfy someone's sexual desires is not an appeal to sympathy under the cases; it is hardly an appeal to man's better nature. *People v Duis,* 81 Mich App 698; 265 NW2d 794 (1978), *People v Rowan,* 76 Mich App 124; 255 NW2d 791 (1977), *People v Soper,* 57 Mich App 677; 226 NW2d 691 (1975).

At most defendant was given an opportunity to commit the charged offense by the activity of Ms. Phillips and the police. This opportunity, one might add, had been seized by defendant on previous occasions. There was no inducement or incitement by the police within the contemplation of the law.

A trial court's finding that no entrapment occurred is subject to appellate review under the clearly erroneous standard. *People v D'Angelo,* 401 Mich 167, 183; 257 NW2d 655 (1977). Furthermore, defendant has the burden of proving the entrapment defense by a preponderance of the evidence. In the instant case, the trial court's finding that entrapment had not been proven was not clearly erroneous.

The entrapment defense is calculated to protect

society in those situations where the police conduct is so reprehensible that the court as a matter of public policy will not permit such conduct to result in a conviction. See *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973) (Justice Stewart dissenting). Police should not be permitted to manufacture crime. However, this is not such a case.

I would affirm.