*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN KEITH PETERSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 364169
Iosco Circuit Court
LC No. 2022-003060-FH

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 6 to 20 years in prison. We affirm.

## I. BACKGROUND

Defendant was arrested and charged with delivery of methamphetamine after he sold two grams of methamphetamine during a controlled buy to an undercover confidential informant. Before the controlled buy, Michigan State Police troopers had arrested the confidential informant for possession of a small amount of narcotics, and they offered to dismiss or reduce her charges if she worked with them to arrange two controlled buys. The confidential informant told police that she could secure drugs from defendant, whom she had met through a former boyfriend.

Defendant and the confidential informant then had the following exchange on Facebook:

    *Confidential Informant*: So Question

    *Defendant*: What's up

    *Confidential Informant*: Need that ball

    Was wondering what's the deal with u and ur girl now

*Defendant*: We talk and get along why

*Confidential Informant*: Are you two back together

Or u single

*Defendant*: Single

*Confidential Informant*: Wanna come back this way with me?

Hang out for the night at my place

*Defendant*: I would love to just have to make sure I'm not going out of town today

*Confidential Informant*: Double check.  Or if u need a ride I'll take u

Just need gas

[Approximately three hours and forty minutes later.]

*Defendant*: I'm trying to hurry can't wait to see you

[Twenty-one minutes later.]

*Defendant*: I need your address

*Confidential Informant*: Lmk when you're on your way

*Defendant*: Ok just got out of the shower

*Confidential Informant*: I'm gonna meet you at family fare before we go back to my place.  I gotta drop that ball off before we can chill

The confidential informant testified that "ball" was a term for three and a half grams of methamphetamine.  She also testified that she and the police came up with the cover story that she had someone who wanted to buy the methamphetamine from her, so she told defendant that she was going to meet with him, drop off the drugs, and then return.  Before the interaction, the confidential informant met with police, who searched her to confirm that she had no drugs or money and who also gave her a recording device and prerecorded cash.  The confidential informant then met with defendant, who gave her two and a half grams of methamphetamine in exchange for $200.  During the interaction, defendant mentioned that he had "no personal" drugs and that he was planning on heading downstate to resupply his drugs.  Defendant also suggested that, rather than give the confidential informant's buyer the full two and a half grams, they keep half a gram and then give the individual the requested amount after they resupplied downstate.  After the transaction, the confidential informant contacted the police to tell them the deal was successful, and they arrested defendant.  Officers then searched the confidential informant again and recovered the methamphetamine.  A Michigan State Police trooper surveilled the entire transaction.

After the prosecution rested, defendant's trial counsel moved to dismiss the case on the basis of entrapment. Trial counsel argued that there was evidence that the government exerted pressure on the confidential informant, threatened the confidential informant with arrest, and controlled the confidential informant in terms of helping her set up the buy. Trial counsel also argued that the investigation specifically targeted defendant. The trial court gave defense counsel an opportunity to present evidence on the matter, which defense counsel declined. The trial court subsequently denied defendant's motion. After trial, defendant filed a motion for a hearing pursuant to *People v Ginther*, 390 Mich 436, 445; 212 NW2d 922 (1973). The trial court granted defendant's motion and held an evidentiary hearing, at which both defendant and his trial counsel testified. At the conclusion of the hearing, the trial court denied defendant's motion for a new trial, holding that defendant did not receive ineffective assistance of counsel and that, even if trial counsel had erred, the outcome of the proceedings would not have been different because it did not find that defendant was entrapped. This appeal followed.

## II. ENTRAPMENT

Defendant argues that the trial court erred when it determined that he failed to prove by a preponderance of the evidence that he was entrapped and denied both defendant's motion to dismiss on the ground of entrapment and his motion for a new trial. We disagree.

This Court reviews "de novo as a matter of law whether the police entrapped a defendant, but the trial court's specific findings of fact are reviewed for clear error." *People v Vansickle*, 303 Mich App 111, 114; 842 NW2d 289 (2013). "Findings of fact are clearly erroneous if we are left with a firm conviction that the trial court made a mistake." *Id*. at 115. Defendant has the burden of proving by a preponderance of the evidence that he was entrapped. *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002). "Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Vansickle*, 303 Mich App at 115 (quotation marks and citation omitted).

This Court considers the following factors to determine whether the police impermissibly induced a defendant to commit a crime:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Vansickle*, 303 Mich App at 115 (quotation marks and citation omitted).]

"Because a defendant may prove police entrapment solely through reprehensible conduct, police instigation is not a prerequisite to a claim of entrapment." *People v Akhmedov*, 297 Mich App 745, 754; 825 NW2d 688 (2012). However, "[t]he police do not engage in entrapment by merely providing a defendant with the opportunity to commit a crime." *Vansickle*, 303 Mich App at 115.

In the present case, the police's targeting of defendant, by setting up and orchestrating the controlled buy, is the only factor (factor 12) that weighs in favor of an entrapment finding. There was no evidence that police offered defendant excessive consideration (factor 5) or any inducement that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen (factor 4). There were also no lapses between the investigation and defendant's arrest (factor 3), no evidence that police guaranteed that the action of selling drugs was not illegal (factor 6), and no government procedures that tended to escalate the criminal culpability of defendant (factor 10). It also weighed against a finding of entrapment that defendant had previously engaged in the sale of drugs and was not induced to commit an offense he otherwise would not consider (factor 2). The confidential informant testified that defendant was her drug dealer, and that she told defendant she would go with him to resupply his drugs from downstate. Accordingly, factors (2), (3), (4), (5), (6), and (10) properly weigh against an entrapment finding.

Further, as the prosecution notes, although there was evidence that *the confidential informant* was pressured by the government and threatened with arrest, there was no evidence that *defendant* was pressured by the government or threatened with arrest (factors 7 and 9). In *People v Juillet*, 439 Mich 34, 63; 475 NW2d 786 (1991), our Supreme Court acknowledged that, although other jurisdictions have recognized that pressure on an informant may be a factor in an entrapment defense, "[w]e think that the pressure on an informant, while perhaps offensive in its execution, does not amount to pressure on the defendant and does not change the context in which we judge whether the hypothetical or the actual defendant was entrapped." The trial court did not make any findings, and the record does not support a conclusion, that the police threatened defendant with arrest or that police improperly exerted pressure on defendant to engage in the crime. Accordingly, factors (7) and (9) also weigh against a finding of entrapment.

There was also no evidence that the confidential informant offered defendant sexual favors in exchange for drugs (factor 8). At the *Ginther* hearing, defendant testified that he engaged in the transaction only because the confidential informant promised to have sex with him in exchange for the drugs. However, it is unclear whether a reasonable person in defendant's position would have believed that the confidential informant was suggesting that she would have sex with defendant if he sold her drugs. The electronic messages between defendant and the confidential informant suggest that any flirtation was merely incidental to the drug transaction, and the record does not indicate that defendant would have been unwilling to commit the crime without the alleged sexual advances. See *People v Wisneski*, 96 Mich App 299, 304-305; 292 NW2d 196 (1980). Accordingly, factor (8) also weighs against an entrapment finding.

Defendant relies on *People v Duis*, 81 Mich App 698, 704; 265 NW2d 794 (1978),[1] and *Juillet*, 439 Mich at 66, to argue that the police essentially gave the confidential informant unfettered discretion to target defendant and failed to properly oversee her actions, which amounted to entrapment (factor 11). However, in *Duis*, 81 Mich App at 699-702 the Court was not only offended by the confidential informant's lack of supervision, but also by the confidential informant's repeated pressure on the defendant to sell him drugs when defendant was unwilling to sell to him, as well as the informant's playing on the sympathy of the defendant, and his cultivating of a relationship with defendant and keeping that relationship alive solely for the purpose of inducing defendant to sell him drugs. In the present case, while the confidential informant may have used her relationship with defendant as a pretext to meet, the record does not indicate that she appealed to defendant's sympathy as her friend to convince him to sell her drugs (factor 1), pressured him to sell her drugs, or cultivated a relationship with him that previously did not exist solely for the purpose of the drug sale.

Defendant's argument that police did not control the confidential informant also conflicts with evidence that police helped the confidential informant generate her cover story, assisted the confidential informant in setting up the controlled buy, searched the confidential informant before and after the transaction, gave her a recording device and marked cash, and surveilled the entire transaction. The fact that "more direct supervision" could have occurred does not mean that the confidential informant "was operating without supervision." *People v Fyda*, 288 Mich App 446, 459; 793 NW2d 712 (2010).

In sum, of the 12 factors that courts consider to determine whether a defendant was entrapped, all but one were either not adequately proven or weighed against an entrapment finding. There was no evidence beyond defendant's own testimony that the police engaged in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances. See *Vansickle*, 303 Mich App at 115. The record reveals that police merely presented "defendant with the opportunity to commit a crime," which is not entrapment. *Id.*[2]

---

[1] Published decisions of the Court of Appeals issued on or after November 1, 1990, are precedentially binding. MCR 7.215(J)(1). Although this Court is "not *strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

[2] Defendant also argues that the confidential informant's offer of sexual favors in exchange for defendant selling her drugs amounted to reprehensible conduct that should not be tolerated by the courts. However, as discussed above, there was no evidence that the confidential informant explicitly promised defendant sex in exchange for drugs or that the police sanctioned or instigated any such promises.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel's failure to call him to testify at the entrapment hearing constituted ineffective assistance of counsel.  We disagree.

Whether a defendant received ineffective assistance of counsel is a mixed question of constitutional law and fact.  *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).  Factual findings are reviewed for clear error, and constitutional determinations are reviewed de novo.  *Id.*  Clear error exists if the reviewing court "is left with a definite and firm conviction that the trial court made a mistake."  *Id.* at 227-228 (quotation marks and citation omitted).  To establish ineffective assistance of counsel, "defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  *Id.* at 228.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (quotation marks and citations omitted).  "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' "  *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).  When determining whether counsel's performance was reasonable, "a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy."  *Abcumby-Blair*, 335 Mich App at 236-237 (quotation marks and citation omitted).

Defendant argues that his trial counsel was ineffective for failing to have him testify at the entrapment hearing.  However, at the *Ginther* hearing, defendant's trial counsel testified that he and defendant mutually agreed that defendant would not testify at trial.  He also testified that he was concerned that if defendant testified at the entrapment hearing, he would jeopardize his ability to testify in a separate but related case in which defendant was charged with soliciting the murder of the confidential informant.  Defendant argues that this concern was misplaced, relying on *People v D'Angelo*, 401 Mich 167, 178; 257 NW2d 655 (1977) (first emphasis added), in which the Michigan Supreme Court explained:

> Any testimony the defendant gives at the entrapment hearing, including his possible admission of the crime charged or some aspect of it, will not be admissible against him *in the case in chief* for substantive purposes as an admission but should the defendant give testimony before the jury in the case in chief on a material matter inconsistent with his entrapment hearing testimony, the prior inconsistent testimony *may* be admitted in the court's discretion to impeach his credibility.

According to defendant, this case stands for the proposition that his testimony at the entrapment hearing would not have been admissible in any other proceeding, and therefore, trial counsel erred when he failed to call defendant to testify out of concern for the potential repercussions in another case.  However, *D'Angelo* plainly states that a defendant's testimony at an entrapment hearing is not substantively admissible against him in the *case-in-chief*.  Defendant's assertion that his testimony was protected from admission in all other proceedings is not supported by his cited

authority. Defense counsel did not act ineffectively by failing to have defendant testify at the entrapment hearing. See *D'Angelo*, 401 Mich at 178.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford