PEOPLE v STANLEY

1. CRIMINAL LAW—DEFENSES—ENTRAPMENT.

The defense of entrapment is available where a prosecution is aimed at the sale of contraband originally obtained from a government agent.

2. CRIMINAL LAW—DEFENSES—ENTRAPMENT—POLICE CONDUCT—PUBLIC POLICY.

Michigan courts do not look to the predisposition of a particular defendant in deciding if there has been entrapment; the inquiry concerns only police conduct and whether the actions of the police were so reprehensible under the circumstances that the court should refuse, as a matter of public policy, to permit a conviction to stand.

3. CRIMINAL LAW—DEFENSES—ENTRAPMENT—INFORMANTS.

The government after utilizing an informant cannot disown his actions, and if an informant supplies contraband drugs to a defendant who then sells the same drugs to a government agent, the defendant may claim entrapment as a defense to a prosecution for the sale.

4. CRIMINAL LAW—DEFENSES—ENTRAPMENT—QUESTION OF LAW.

The determination of whether a defendant has been entrapped is a question of law for decision by the court, rather than a jury.

5. DRUGS AND NARCOTICS—INFORMANTS—DEFENSES—ENTRAPMENT—REMAND—HEARINGS.

A case should be remanded for an evidentiary hearing to determine whether a police informant supplied narcotics to a defendant which the defendant later sold back to the informant and a police officer, thus affording the defendant the defense of entrapment, where the trial court made no findings of fact upon deciding that there had been no entrapment, and the testimony of both the defendant and the informant is contradictory.

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 21 Am Jur 2d, Criminal Law §§ 143–145.

25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 43, 46, 47.

6. CRIMINAL LAW—DEFENSES—ENTRAPMENT—BURDEN OF PROOF—
   PRESUMPTION OF INNOCENCE.

A defendant generally has the burden to establish by a prepon-
derance of the evidence the facts constituting the defense of
entrapment; placing this burden on the defendant does not
contravene the rule that a defendant enjoys the presumption of
innocence, because entrapment does not negate the defendant's
complicity in the crime charged, nor does it go primarily to the
question of what motives or perceptions caused or accompanied
the defendant's conduct.

Appeal from Ingham, Jack W. Warren, J. Sub-
mitted February 9, 1976. (Docket No. 22743.) De-
cided April 26, 1976.

Marion Stanley was convicted of delivery of
heroin. Defendant appeals. Remanded for a hear-
ing to determine whether the defendant was en-
trapped.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Raymond L. Scodel-
ler,* Prosecuting Attorney, and *Lawrence J. Emery,*
Assistant Prosecuting Attorney, for the people.

*H. Eugene Bennett,* for defendant.

Before: BRONSON, P. J., and MCGREGOR and
R. M. MAHER, JJ.

R. M. MAHER, J. A jury found defendant guilty
of delivery of heroin, MCLA 335.341(3)(a); MSA
18.1070(41)(3)(a). He received a 3-1/2 to 20 year
sentence, and appeals of right.

Defendant admitted at trial that he delivered
heroin to Richard Upton on March 13, 1974. His
defense was entrapment, based upon his allega-
tions that the drugs sold to Upton, a drug addict
turned state police informant, had been purchased
from Upton about two weeks earlier, and that

Upton and Noreen Earhart, a state police detective, feigned withdrawal sickness to bring about the sale. The trial court, without stating whether it believed defendant's account of where he obtained the heroin, found no entrapment.

## I.

The defense of entrapment is available where the prosecution is aimed at the sale of contraband originally obtained from a government agent. Although no Michigan case has considered the propriety of the government prosecuting the distribution of narcotics that it had supplied, cases from other jurisdictions strongly condemn this practice. In *People v Strong,* 21 Ill 2d 320; 172 NE2d 765 (1961), the Supreme Court of Illinois had this to say about police furnishing narcotics in their attempts to control narcotics traffic:

"While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense." 21 Ill 2d at 325; 172 NE2d at 768.

Other state court decisions finding entrapment in narcotics cases when the government is the initial source of the drugs later delivered include: *State v McKinney,* 108 Ariz 436; 501 P2d 378 (1972), *State v Boccelli,* 105 Ariz 495; 467 P2d 740 (1970), *State v Sainz,* 84 NM 259; 501 P2d 1247 (NM App, 1972), *Jones v State,* 285 So 2d 152

(Miss, 1973), *Striplin v State,* 499 P2d 446 (Okla Crim App, 1972).

The Federal courts have also applied the defense of entrapment to prosecutions for dealing in illegal narcotics that a government agent had supplied to a defendant. The leading Court of Appeals case, *United States v Bueno,* 447 F2d 903 (CA 5, 1971), was decided before *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). In *Bueno,* the Fifth Circuit found offensive the spectacle of "the government buying heroin from itself, through an intermediary, the defendant, and then charging him with the crime". 447 F2d at 905.

The majority's choice in *Russell, supra,* of the "subjective" test for entrapment that denies that defense to the "unwary criminal", 411 US at 436, has led some Federal courts to refuse to hold entrapment applicable in every prosecution for the *return* of drugs to the government. For example, in *United States v Hampton,* 507 F2d 832 (CA 8, 1974), *cert granted,* 420 US 1003; 95 S Ct 1445; 43 L Ed 2d 761 (1975), two judges of the Eighth Circuit affirmed a conviction for narcotics distribution, finding no error, in light of *Russell,* in the trial court's refusal to instruct that if the government had provided defendant with the heroin he distributed, there should be no conviction. Judge Heany in dissent wrote that he "would have this Circuit adopt the Fifth Circuit rule that entrapment is established as a matter of law to a charge of possessing contraband or distributing contraband to a government agent, where such contraband was supplied to the defendant by a government agent, including a paid informer". 507 F2d at 836.

The Fifth Circuit, as Judge Heany's dissent indicates, has distinguished *Russell* from those

cases where the government supplies contraband. In *Russell,* a government informant supplied a difficult to obtain, yet legal, ingredient used to manufacture an illegal drug. See, *e.g. United States v Oquendo,* 490 F2d 161 (CA 5, 1974), *United States v Gomez-Rojas,* 507 F2d 1213 (CA 5, 1975). The Third Circuit, like the Fifth, does not find that *Russell* precludes holding as a matter of law that there can be no conviction for the sale of narcotics which a government agent had supplied to a defendant. *United States v West,* 511 F2d 1083 (CA 3, 1975).

It is unnecessary for this Court to determine whether under the test approved by the majority in *Russell* a government-to-defendant-to-government transfer of drugs would not always constitute entrapment. *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), adopted as the rule for this state the "objective" test urged by Justice Stewart in his dissent in *Russell,* 411 US at 439; 93 S Ct at 1646; 36 L Ed 2d at 377. In deciding if there has been entrapment, Michigan courts do not look to the predisposition of a particular defendant, *i.e.,* determine whether the police conduct was directed at a good or at a bad person; the inquiry concerns only police conduct and "whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". *People v Turner,* 390 Mich at 22. In categorizing certain police actions as reprehensible, we find it significant that certain Federal courts, even though bound by the majority opinion in *Russell,* are so offended by "take back sales" that they hold these transactions to automatically constitute entrapment.[1]

---

[1] Despite the Fifth Circuit's willingness to apply *United States v*

There can be no doubt that if defendant obtained heroin from Upton, a police informant, and later sold the same heroin back to Upton, his conviction for that sale would be invalid. It is difficult to conceive of a clearer instance of manufactured crime, of "police conduct * * * [that] falls below standards, to which common feelings respond, for the proper use of governmental power". *Sherman v United States,* 356 US 369, 382; 78 S Ct 819; 2 L Ed 2d 848 (1958) (concurring opinion by Justice Frankfurter).

We attach no importance to the fact that defendant alleges that an informant, and not a police officer, was the source of the heroin he sold. The government, after utilizing an informant, cannot disown his actions. *Sherman v United States,* 356 US 369, 373–374; 78 S Ct 819; 2 L Ed 2d 848 (1958). Even if police officers working with an informant claim ignorance of the fact that the informant was the supplier of contraband, entrapment is still available as a defense, *United States v Gomez-Rojas, supra,* "When persons who are not law-enforcement officials act with official encouragement or assistance, they should be treated as government agents for purposes of the entrapment defense. Otherwise, its protection could be avoided by indirection." Note, 73 Harv L Rev 1333, 1341 (1960).

## II.

During the trial below, a hearing out of the presence of the jury was held to determine if

*Bueno,* 447 F2d 903 (CA 5, 1971), even after *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973), *Bueno,* with its emphasis upon the conduct of government agents and its lack of concern with defendant's willingness to engage in crime, does seem to apply an "objective" test that *Russell* rejected. *See* Note, 7 U of Mich J of L Ref 361, 363, n. 11 (1974).

defendant had been entrapped. This Court has held that decision by the judge, rather than the jury, is the correct procedure when entrapment is raised.[2] *People v Habel (On Rehearing),* 53 Mich App 399; 220 NW2d 74 (1974), *People v Zeegers,* 61 Mich App 546; 233 NW2d 76 (1975), *People v Fraker,* 63 Mich App 29; 233 NW2d 878 (1975), *People v Sheline,* 64 Mich App 193; 235 NW2d 177 (1975), *lv granted,* 395 Mich 817 (1976), *People v Cushman,* 65 Mich App 161; 237 NW2d 228 (1975). These decisions recognize that the entrapment test ennunciated in *Turner* presents questions about the propriety of police conduct ill-suited for jury resolution. "[T]he determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury." *United States v Russell, supra,* 411 US at 441; 93 S Ct at 1647; 36 L Ed 2d 379 (dissenting opinion by Justice Stewart).

At the hearing on entrapment, only defendant and Noreen Earhart, a state police detective, gave testimony. Defendant testified that Upton, whom he had met some years earlier at a methadone clinic, sold him a quantity of heroin approximately two weeks before Upton and Earhart arrived at defendant's home on March 13, 1974, looking for heroin. Defendant's description of the amount of heroin he purchased from Upton varied. Defendant was out with his wife when Upton and Earhart arrived on the night of March 13, but a babysitter told them how defendant could be reached. Defendant claims it took two telephone

---

[2] We need not decide the propriety of submitting the issue to the jury *after* a ruling against the defendant by the judge. The trial court utilized this procedure, but there is no indication of prejudice to defendant. Submission to the jury may be appropriate in some cases. Wise, Annual Survey of Michigan Law, Criminal Law and Procedure, 21 Wayne L Rev 401, 424 (1975).

calls from Upton to persuade him to return home. When defendant arrived, Upton told him he was experiencing withdrawal sickness and needed heroin. Defendant then left and returned with what he alleges was part of the heroin Upton had earlier sold him. Defendant testified that although he was still using heroin when he made the purchase from Upton, he was trying to quit and had left the heroin at a friend's house to prevent ready access to it.

Earhart testified on the separate record that she could not dispute defendant's allegation that Upton was the source of the heroin sold on March 13, 1974. Upton was not called to testify at the separate hearing. He had earlier, under cross-examination before the jury, given the following testimony:

"*Q.* I see. How did you support yourself during this period of time, from say the time you went to work for the State Police in January until the middle of March when this occurred?

"*A.* How'd I support myself?

"*Q.* (Nodded head)

"*A.* Hustlin'.

"*Q.* You hustled?

"*A.* Yes.

"*Q.* Sold some drugs?

"*A.* Yes, sir.

"*Q.* This was after the period that you went to work for the State Police?

"*A.* No, not during that period I didn't."

This testimony is contradictory and the prosecution did not claim at trial that it refuted defendant's allegations. A clear denial of defendant's allegation that Upton supplied the heroin did not

come until after the court ruled there was no entrapment. The prosecution, attempting to rebut defendant's presentation of entrapment before the jury, asked Upton on redirect examination whether he had given any narcotics to defendant since he began work with the state police intelligence unit. He testified that he had not, though he admitted giving defendant narcotics before he began working as an informant.

The trial court did not make findings of fact when it ruled that there had been no entrapment. It cannot be determined with any certainty from the record whether the ruling was due to the court's disbelief of defendant or to the view that Upton's activity, as described by defendant, did not constitute entrapment.

The prosecution, pointing out that inconsistencies in defendant's testimony impugn his credibility, urges this Court to find in the record adequate factual support for the trial court's ruling. We are not overly impressed with defendant's credibility, and find portions of his testimony at least confusing, if not contradictory. On the other hand, what the record discloses about Upton gives us reason to be skeptical about his testimony,[3] and we think some significance should be given to his failure to testify at the entrapment hearing. The trial court is in a better position than this Court to determine what truth there is to defendant's allegations about the source of the heroin delivered on March 13, 1974. We therefore remand this cause for an evidentiary hearing to determine whether Upton supplied the heroin.

[3] Upton's participation in developing drug cases appears to have been an extremely lucrative proposition. He was paid $12,000 plus some expenses for the first part of 1974. He admitted still using drugs while working for the state police, and selling drugs in the past.

III.

The resolution of the factual issue this case presents will most likely depend upon which witness, defendant or Upton, is the most believable. We think that, as a general rule, it should be a defendant's burden to establish by a preponderance of the evidence the facts constituting entrapment. The defense of entrapment, crucial only after all elements of the offense have been proved beyond a reasonable doubt and, under *Turner*, available regardless of defendant's predisposition, allows a defendant to avoid conviction and punishment because of the public policy against certain police actions. It seems right that the defendant who invokes this public policy to avoid the consequences of his proscribed conduct should have to demonstrate a deviation from accepted standards of law enforcement.

This burden upon a defendant does not contravene the basic rule of criminal law that a defendant enjoys the presumption of innocence. While a defendant cannot be required to establish his alibi, *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), entrapment, unlike alibi, does not negate defendant's complicity in the crime charged. Similarly, while self-defense and insanity, when raised, must be excluded by proof beyond a reasonable doubt, *People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961), *People v Woodfork,* 47 Mich App 631; 209 NW2d 829 (1973), entrapment as defined in *Turner* is easily distinguishable from these defenses: it does not go primarily to the question of what motives or perceptions caused or accompanied an individual's conduct.[4]

---

[4] Testimony from defendant about his response to police conduct is relevant, and can be introduced to show the type of provocation and incitement employed by police. But, under the *Turner* test, it is not

If the "subjective" test for entrapment was applied in Michigan, it would be doubtful whether a defendant could be required to establish the defense. It seems somewhat inconsistent with the presumption of innocence to make a defendant claiming entrapment prove his lack of predisposition to crime, to prove that he was an "unwary innocent".[5]

While we are not aware of any jurisdiction which employs an objective test for entrapment and requires the prosecution to prove that a defendant was not entrapped, New York, which has statutorily defined entrapment as police methods that "create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it", Penal Law 1965, § 40.05, requires a defendant establish entrapment by a preponderance of the evidence. Penal Law 1965, § 25.00, *People v Laietta,* 30 NY2d 68; 281 NE2d 157 (1972), *cert den,* 407 US 923; 92 S Ct 2471; 32 L Ed 2d 809 (1972). The drafters of the Model Penal Code also decided upon an "objective" test for entrapment, and give the defendant the burden of proving "by a preponderance of the evidence that his conduct occurred in response to an entrap-

essential to determine defendant's motivation in committing the crime charged.

[5] For a brief discussion of the approaches to the burden of proof used in Federal courts, *see* Kamisar, LaFave and Israel, Modern Criminal Procedure, 495 (4th ed, 1974). The Fifth Circuit holds that when a defendant testifies that he was supplied narcotics by a government agent, the burden is upon the prosecution to prove beyond a reasonable doubt that the government informer did not supply the drugs, *e.g., United States v Gomez-Rojas,* 507 F2d 1213 (CA 5, 1975). Since entrapment is a jury question in Federal courts, they must be concerned with problems of jury confusion in deciding questions about the burden of going forward and the burden of persuasion.

It is not unheard of, in fact, it may be the majority practice, to place the burden of proof on the defendant even when the subjective test is used. *See* 29 Am Jur 2d, Evidence, § 156, p 188.

ment". Model Penal Code, § 2.13 (Proposed Official Draft, 1962).

Remanded for hearing to determine whether defendant was entrapped. We retain jurisdiction.