PEOPLE v ROY

PEOPLE v BERRIER

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST.

   The Michigan Supreme Court has adopted the objective test for the defense of entrapment; the objective test focuses upon the police conduct itself without regard to the predisposition of the particular defendant to have engaged in the crime.

2. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—LEGAL QUESTION —PUBLIC POLICY.

   The issue of entrapment under the objective test is a legal question to be decided by the trial court; this legal decision focuses basically on public policy grounds, specifically, on which police tactics involving the detection and prevention of crimes are justifiable in a free society.

3. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—PREDISPOSITION TO CRIME—POLICE OFFICERS—UNDERCOVER ACTIVITY—OPPORTU- NITY TO COMMIT CRIME.

   A person's predisposition to crime should not expose him to unlawful government participation in a criminal transaction; this does not mean that the government's use of undercover activity, strategy, or deception is necessarily unlawful and government agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit a crime the opportunity to do so.

Appeal from Jackson, Russell E. Noble, J. Submitted June 20, 1977, at Lansing. (Docket Nos. 29477, 77-1079.) Decided January 23, 1978. Leave to appeal denied, 402 Mich —.

James R. Roy, Jr., and Harrison Berrier were charged with conspiracy to deliver heroin, conspiracy to possess heroin, attempted delivery of heroin,

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law §§ 143–145.
   Availability of defense of entrapment where accused denies partici- pating at all in offense. 61 ALR2d 677.

attempted possession of heroin, and defendant Roy was also charged with wilful neglect of duty. Motion to quash the information granted and charges dismissed. The people appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert C. Ward, Jr.,* Assistant Attorney General, for the people.

*Myron E. Sanderson,* for defendant Roy.

*Christian & Conant,* for defendant Berrier.

Before: D. F. WALSH, P. J., and QUINN and H. D. STAIR,* JJ.

H. D. STAIR, J. Defendants James Roy, Jr. and Harrison Berrier were arrested and charged with four offenses: conspiracy to deliver heroin, MCLA 750.157a; MSA 28.354(1), MCLA 335.341(1); MSA 18.1070(41)(1), conspiracy to possess heroin, MCLA 750.157a; MSA 28.354(1), MCLA 335.341(4), MSA 18.1070(41)(4), attempted delivery of heroin, MCLA 750.92; MSA 28.287, MCLA 335.341(1); MSA 18.1070(41)(1), and attempted possession of heroin, MCLA 750.92; MSA 28.287, MCLA 335.341(4); MSA 18.1070(41)(4). Defendant Roy was also charged with wilful neglect of duty, MCLA 750.478; MSA 28.746.

Prior to the scheduled trial date defendants filed a motion to quash the information, asserting that they had been entrapped. After oral arguments and a stipulation that the trial judge consider the preliminary examination transcript in lieu of an evidentiary hearing, the court ruled that defendants had been entrapped and ordered all evidence

---

* Circuit judge, sitting on the Court of Appeals by assignment.

suppressed and the charges dismissed. The prosecution brings the present appeal.

The facts of the present case were detailed at the preliminary examination. Ronald Stardevant, an inmate of Jackson Prison, wrote a letter to the Michigan Attorney General's office seeking a personal interview. Special agent Charles Rettstadt, of the Attorney General's Organized Crime Division, met with Stardevant on October 21, 1975. Stardevant expressed a fear that California authorities were in some manner seeking to interfere with his chances of parole. Stardevant sought the agent's help in gaining parole. At one point of the conversation Stardevant mentioned the amount of drug traffic in Jackson Prison, but denied personal knowledge of the methods used.

At a second meeting Stardevant told Rettstadt that he had found out how drugs could be smuggled into the prison. The method was that an inmate who had a drug seller on the outside would pass on his seller's phone number to an inmate who had a contact with a prison employee. The employee would phone the seller, meet with him outside of the prison, and then transport the drugs into the prison. The employee would give the drugs to his inmate-contact, who would then deliver them to the buyer. The employee and the inmate-contact would be paid a service charge for their part of the transaction. After hearing of this method Rettstadt instructed Stardevant to find out specific names of inmates who would arrange this type of drug deal.

At their next meeting Stardevant told Rettstadt that he had talked to defendant Berrier, a fellow inmate, and that Berrier had told him that if he had a contact on the outside that drugs could get into the prison. Rettstadt gave Stardevant a phone number and code name to pass on to Berrier.

Stardevant informed Berrier of the phone number and code name. A few days later Rettstadt received a call from a man, later identified as Roy, at the special number. Roy asked for "Duke", the code name. Rettstadt arranged to meet with Roy at a shopping center parking lot.

At the meeting Rettstadt gave to Roy $100 in cash and a packet containing a facsimile of heroin that had been prepared by a state police chemist. Rettstadt told Roy that he would pay another $100 after he learned that his buyer (Stardevant) received the drugs. Roy at one point told Rettstadt that he was a prison employee, and another time said that he was a prison guard. In fact, Roy was a prison industries employee.

The next day Stardevant received a foil package containing a powdery substance from Berrier, which Berrier said had been brought into the prison from Stardevant's dealer. Berrier apparently suspected that the substance was not real heroin and took some of it to test.

Stardevant gave the package to a prison security guard who then transferred it to Rettstadt. The chemist analyzed the substance and found it to be the same facsimile heroin he had originally provided.

When Berrier asked Stardevant why the heroin was fake, Stardevant replied that his dealer had not trusted the arrangment and had sent through a test package to see if it would actually reach Stardevant. Stardevant told Berrier to have his contact call the phone number again to set up the real transaction.

The same day Rettstadt received another call from Roy. A new meeting was set up. At the second meeting Rettstadt gave Roy more money and another package of facsimile heroin. Roy was

then arrested as he drove out of the parking lot. Berrier was arrested inside of the prison.

In *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the Michigan Supreme Court adopted for use in Michigan the "objective test" for entrapment. This test was originally set out by the dissenting opinion of Justice Stewart in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). In *Russell,* Justice Stewart stated the objective test as follows:

"[W]hen the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce *or* instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." *United States v Russell, supra,* at 445.

The objective test thus focuses on the police conduct itself without regard to the predisposition[1] of the particular defendant to have engaged in the crime.

Entrapment under the objective test is a legal question to be decided by the trial court. *People v Sheline,* 64 Mich App 193; 235 NW2d 177 (1975), *lv granted,* 395 Mich 817 (1975). The legal decision focuses basically on public policy grounds, specifically on which police tactics involving the detection and prevention of crime are justifiable in a

---

[1] Under the subjective test, adopted by the *Russell* majority, the focus of the entrapment inquiry is on whether the particular defendant was predisposed to commit the crime. If so, the entrapment defense is not available.

free society. In *Turner, supra,* the Court criticized the use of the subjective test because it:

"fails to focus on the real concern in these cases—whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". *People v Turner, supra,* at 22.

The present case involves a situation where the government agents were operating on both ends of a supposed drug transaction. The informant inside of Jackson Prison acted as the buyer and had direct contact with defendant Berrier. The undercover agent on the outside acted as the supplier and had direct contact with defendant Roy. This type of arrangement is sometimes referred to as a "take back" sale, where the intermediary between the two government agents is arrested for his part of the transaction. Although a different panel of this Court has held a "take back" sale to constitute entrapment,[2] we do not find that the defense was established in the present case.

Focusing solely on the police conduct, as required by the *Turner* test, this Court does not consider that conduct to be reprehensible under the circumstances. It must be presumed that of the two defendants involved, the key person in the government's view was Roy, the prison employee. Without a conduit who can freely bring drugs into the prison and transfer them to an inmate there would be no drug trafficking. Under these facts, the investigation centered on getting direct evidence of Roy's involvement.

Roy, however, did not operate unless an inmate

---

[2] *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976), *see also Hampton v United States,* 425 US 484; 96 S Ct 1646; 48 L Ed 2d 113 (1976) (Brennan, J., dissenting).

provided him with an outside source of drugs. To obtain the required evidence, therefore, it was necessary for the police to provide the outside contact. But the method of operation was not suggested by the police. The plan originated with Roy and Berrier. Nor did the police use any tactics calculated to induce the defendants to commit a crime they were not otherwise ready to commit. They merely followed instructions given them by Berrier.

In *United States v Russell, supra,* Justice Stewart stated his view that a person's predisposition to crime should not expose him to unlawful government participation in the criminal transaction. He qualified that opinion, however, with the following statement:

"This does not mean, of course, that the Government's use of undercover activity, strategy, or deception is necessarily unlawful. *Lewis v United States,* 385 US 206, 208–209; 87 S Ct 424; 17 L Ed 2d 312 (1966). Indeed, many crimes, especially so-called victimless crimes, could not otherwise be detected. Thus, government agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so. *Osborn v United States,* 385 US 323, 331–332; 87 S Ct 429; 17 L Ed 2d 394 (1966)." *United States v Russell, supra,* at 445.

In our judgment, the government agents in this case did nothing more than afford two persons ready and willing to commit a crime an opportunity to do so. The police conduct was not "of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it". *United States v Russell, supra,* at 445. We find no entrapment in this case.

The order of the trial court is reversed. The case is remanded for reinstitution of the charges.

Quinn, J., did not participate.