PEOPLE v DUKE

Docket No. 77-5165. Submitted October 11, 1978, at Lansing.—Decided December 8, 1978. Leave to appeal denied, 406 Mich 924.

Herschel D. Duke was charged with possession of heroin. The information was dismissed on the ground of entrapment, Jackson Circuit Court, Russell A. Noble, J. The people appeal. *Held:*

The fact that a drug was provided by a government agent is certainly a factor to consider but it is not conclusive and must be considered along with all the other facts of the case. The defense of entrapment is not available where the defendant and others conceived the idea for the crime and the police merely responded to their orders and provided them with an opportunity to commit the crime.

Reversed and remanded.

1. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—PREDISPOSITION TO COMMIT CRIME—REPREHENSIBLE POLICE CONDUCT—PUBLIC POLICY.

The objective test for entrapment, which has been adopted in this state, does not focus upon a defendant's predisposition to commit the crime charged but upon whether the actions of the police were so reprehensible under the circumstances that a court should refuse, as a matter of public policy, to permit a conviction to stand.

2. CRIMINAL LAW—ENTRAPMENT—POLICE CONDUCT—EVIDENCE—FINDINGS OF FACT.

A trial judge, in ruling on a question of entrapment, is required to consider police conduct in relation to a hypothetical defendant, not one ready and willing to commit a crime, and to make findings of fact upon the evidence presented.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 21 Am Jur 2d, Criminal Law § 144.

[2, 3] 21 Am Jur 2d, Criminal Law § 143.

[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 43.

Entrapment to commit offense with respect to narcotics law. 33 ALR2d 880.

3. Criminal Law—Entrapment—Burden of Proof.

   A defendant bears the burden of proving entrapment by a preponderance of the evidence.

4. Drugs and Narcotics—Entrapment—Contraband—Sales—Government Agents—Evidence.

   The defense of entrapment in a narcotics case is not always available where the prosecution is aimed at the sale of contraband originally obtained from a government agent; the fact that a drug was provided by the government is certainly one factor to consider, but that factor must be considered along with all the other facts of the case.

5. Criminal Law—Entrapment—Police Conduct—Idea for Crime — Opportunity to Commit Crime.

   Entrapment is not a defense where the record supports the conclusion that the idea for a crime did not originate with the police and that the police were merely responding to orders of those who had conceived the crime and providing them with an opportunity to commit the crime.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Assistant Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant on appeal.

Before: Danhof, C.J., and Bashara and Cynar, JJ.

Per Curiam. The people appeal as of right from a December 23, 1977, order of Jackson County Circuit Judge Russell A. Noble, dismissing an information against defendant on the ground of entrapment.

Defendant was arrested on August 14, 1977, and charged with the possession of heroin, a violation of MSA 335.341(4)(a); MSA 18.1070(41)(4)(a). On December 14, 1977, an entrapment hearing was held. At the hearing Detective Piziali of the Michi-

gan State Police testified that he was contacted by the warden of the State Prison of Southern Michigan at Jackson. The wife of inmate Donald McAllister had informed the warden that other inmates, who believed McAllister had outside drug connections, were pressuring McAllister to smuggle drugs into the prison. These inmates, led by "Redbone" Brown, claimed to have the cooperation of a guard at the prison. They wanted McAllister's wife to deliver some drugs to the prison guard. The drugs would be brought into the prison by the guard and the heroin eventually delivered to McAllister, who in turn would turn the drugs over to Redbone Brown. McAllister was willing to cooperate with the state police in apprehending the guard involved in the scheme.

Subsequently, however, Mrs. McAllister left the state. Thus, Detective Piziali obtained the assistance of trooper Janece Vortman, who agreed to pose as McAllister's wife. In accordance with instructions relayed through McAllister, trooper Vortman obtained a hotel room at a local Holiday Inn. At the time, she was in possession of a packet of heroin provided by the state police laboratory.

On August 14, 1977, trooper Vortman received a call from a woman asking if she had a package. The caller, who said her husband was a prison guard, indicated that she would pick up the package. Vortman responded that she was instructed to deliver the package only to the guard. The caller then agreed to have her husband pick up the package.

Forty-five minutes later, defendant appeared at the hotel room and identified himself. He was given the heroin which was in a clear plastic packet. He was told it was fifty percent pure and that she didn't want it "stepped on". After exam-

ining the packet, defendant left the room. It was the intention of the police to arrest defendant after he returned to the prison. However, defendant did not go directly to the prison, but instead went toward his home. Fearing that the heroin might be lost, the police arrested defendant.

Defendant disclaimed any knowledge of a heroin smuggling operation. He testified that on the day of the exchange he was contacted by Dennis Hicks, an inmate at the prison. Hicks asked him to pick up a package for him at the Holiday Inn. Defendant claimed to know nothing about the contents of the package. He inferred from trooper Vortman's comments at the time of the exchange that the package contained brown sugar.

Redbone Brown also testified at the hearing. He claimed to have no knowledge of any smuggling activities involving a prison guard. He claimed that McAllister had at one time approached him about smuggling drugs into the prison, but that he had refused to participate in such a venture.

Michigan has adopted the "objective test" for determining if entrapment has occurred. *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). That test, which was taken from Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973), does not focus upon a defendant's predisposition to commit the crime charged. Rather, the focus is on:

"whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand." *Turner, supra,* at 22.

In setting forth the objective test for entrapment, the Court further relied upon language from Justice Stewart's dissent in *Russell, supra,* noting:

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." *Turner, supra,* at 21.

In ruling on a question of entrapment, the trial judge is required to make findings of fact, based upon the evidence presented at the hearing, *People v Cancino,* 70 Mich App 90, 94; 245 NW2d 414 (1976). The trial judge is required to consider the police conduct in relation to a hypothetical defendant, not one ready and willing to commit the crime. *People v Zeegers,* 61 Mich App 546, 550; 233 NW2d 76 (1975). Defendant has the burden of proving entrapment by a preponderance of the evidence. *People v D'Angelo,* 401 Mich 167, 183; 257 NW2d 655 (1977). Typically, those cases where entrapment has been found involve situations where the police have pressured the defendant into committing the crime, *People v Duis,* 81 Mich App 698, 703; 265 NW2d 794 (1978), or where they have in some way played upon his sympathies. *People v Soper,* 57 Mich App 677, 679; 226 NW2d 691 (1975).

However, in the present case, the facts fail to establish any such conduct on the part of the police. Rather, defendant relies upon the fact that the heroin which provides the basis for the possession charge was supplied by the police. In support of this theory, defendant cites *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976). There, the

Court held that the defense of entrapment is available where the prosecution is aimed at the sale of contraband originally obtained from a government agent. In addition, *Stanley* involved a situation where a state police detective feigned withdrawal sickness to bring about the sale.

The present case, however, involves neither an appeal to defendant's sympathies, nor a "take-back" sale. Rather, the present case involves a situation where the police, in response to orders from the persons involved in the criminal enterprise, delivered a quantity of heroin to defendant. Although the fact that the drugs were provided by the government in this case is certainly one factor to consider, that factor must be considered along with all the other facts of the case.

We now hold that the trial judge erred in ruling that entrapment had occurred. The record supports the conclusion that the idea for the crime did not originate with the police. The police had no role in determining how the transfer of the drugs would be carried out.[1] The police were merely responding to the orders of those who had conceived the crime.

We find certain language in *People v Roy,* 80 Mich App 714; 265 NW2d 20 (1978), to be applicable to this case. That case, like *Stanley, supra,* involved a "take-back" sale, where drugs were furnished to defendant by the police and later delivered to a different police agent. As is alleged in the present case, *Roy, supra,* involved a situation where an inmate, Berrier, was working with a

---

[1] The trial judge's findings that the officers contacted defendant by telephone and that they supplied him with heroin when he followed their directions are not supported by the evidence. Instead, the evidence indicates that trooper Vortman obtained the hotel room at the direction of Redbone Brown and the other inmates and that she was contacted there by defendant's wife.

prison guard, Roy, to bring in drugs provided by an inmate-informant. In upholding the police conduct against a claim of entrapment, the Court noted at 719-720:

"Roy, however, did not operate unless an inmate provided him with an outside source of drugs. To obtain the required evidence, therefore, it was necessary for the police to provide the outside contact. But the method of operation was not suggested by the police. The plan originated with Roy and Berrier. Nor did the police use any tactics calculated to induce the defendants to commit a crime they were not otherwise ready to commit. They merely followed instructions given them by Berrier."

In the present case it was also necessary for the police to provide the outside contact in order to apprehend the guard who was allegedly smuggling the drugs into the prison.[2] We do not believe that any "public policy" supports the notion that the police were required to refuse McAllister's assistance. Rather, in going along with the smugglers' preconceived plan, the police merely provided them an opportunity to commit the crime. This is not enough to support a claim of entrapment. *People v Lassen,* 65 Mich App 720, 722; 238 NW2d 384 (1975), *Turner, supra,* at 21.[3]

The decision of the trial judge is reversed and the case remanded for trial.

---

[2] We note defendant's claim that he did not know the package contained heroin. The determination of guilt or innocence is a separate consideration from that of entrapment. *People v D'Angelo,* 401 Mich 167, 176; 257 NW2d 655 (1977). Nothing said herein should be construed as bearing upon defendant's guilt or innocence of the crime charged.

[3] In light of our disposition of this case, we do not find it necessary to address the prosecutor's challenge to the "objective test" for entrapment.