PEOPLE v JONES

PEOPLE v SWINEY

PEOPLE v ZIMMERMAN

Docket No. 93405. Submitted November 17, 1987, at Lansing. Decided January 19, 1988.

Chester R. Jones, Richard G. Swiney and Eugene R. Zimmerman were charged in Oakland Circuit Court with larceny with damage to a safe and breaking and entering a building with intent to commit larceny. The trial court, Robert C. Anderson, J., dismissed the charges after finding that defendants were entrapped by an informer acting as an agent of the police. The people appealed.

The Court of Appeals *held:*

1. The trial court did not clearly err in finding that the informer acted as an agent of the police. The informer had a long-term, ongoing relationship with the police. The fact that the informer was not given specific orders prior to his involvement in this case should not defeat a finding that he acted with official encouragement or assistance.

2. The trial court's finding of entrapment was not clearly erroneous. The facts support the trial court's finding that the informant's actions exceeded what would be necessary to aid the police. The informant's planning, organization and know-how induced the commission of this crime.

Affirmed.

1. CRIMINAL LAW — DEFENSES — ENTRAPMENT.

Persons who are not law-enforcement officials but who act with

REFERENCES

Am Jur 2d, Criminal Law §§ 202, 206, 208.

Burden of proof as to entrapment defense—state cases. 52 ALR4th 775.

Permissible surveillance, under state communications interception statute, by person other than state or local law enforcement officer or one acting in concert with officer. 24 ALR4th 1208.

Admissibility of evidence of other offenses in rebuttal of defense of entrapment. 61 ALR3d 293.

See also the annotations in the Index to Annotations under Entrapment and Police and Law Enforcement Officers.

official encouragement or assistance should be treated as government agents for purposes of the entrapment defense.

2. CRIMINAL LAW — DEFENSES — ENTRAPMENT.

The burden is on the defendant to show entrapment by a preponderance of the evidence; a trial court's decision regarding entrapment will be upheld on appeal unless it is clearly erroneous.

3. CRIMINAL LAW — DEFENSES — ENTRAPMENT.

Michigan uses an objective test for entrapment that focuses on police conduct; the test examines whether the actions of the police were so reprehensible under the circumstances that, as a matter of public policy, the conviction should not stand; the police conduct forbidden is that which would induce the commission of a crime by one not ready to commit it, regardless of the propensities of the particular person induced.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*), for Chester Jones and Eugene Zimmerman.

Before: M. J. KELLY, P.J., and G. R. McDONALD and J. D. PAYANT,* JJ.

J. D. PAYANT, J. Defendants were charged with larceny with safe damage, MCL 750.531; MSA 28.799, and breaking and entering a building with the intent to commit larceny, MCL 750.110; MSA 28.305. The trial court dismissed the charges after finding that defendants were entrapped by an informant acting as an agent of the police. The people appeal as of right.

The informant told the police that defendants were going to commit a breaking and entering of

* Circuit judge, sitting on the Court of Appeals by assignment.

McMartin's Jewelry Store. The informant testified at the entrapment hearing that he was twenty-five years old and earned $100,000 per year in real estate and race horses. He had previously received a two-year term of probation for possession of counterfeiting plates, which had been expunged from his record. The informant said he had been meeting with Michigan State Police Trooper Thomas Cremonte since January or February of 1982 or 1983. They met approximately five hundred to one thousand times, sometimes as often as two or three times a day. The informant gave Cremonte information and assistance in approximately twenty cases. The informant characterized his work with Cremonte as being undercover work.

Trooper Cremonte said he worked with the informant for about eighteen months. Cremonte said that the informant usually worked on drug cases, but assisted in an insurance fraud case as well as this breaking and entering. Cremonte said that the informant sometimes went into "deep cover," where he would work undercover for weeks at a time. Cremonte said that at first he did not trust the informant's judgment. He said that, as with other informants, control had to be exercised over the informant to teach him what conduct would violate the law. Cremonte said that despite occasional problems controlling the informant, "He worked out really well for us."

Although he had received reimbursement for minor expenses in other cases, the informant said that the police paid him nothing in connection with this breaking and entering case. In addition to receiving no money, the informant said he received no trades or favors of any kind from the police. When questioned as to his motive for working with the police, he said that he was unsure what motivated him. Trooper Cremonte suggested

that the informant had previously been involved in organized crime in Grosse Pointe until a friend of his was killed, which motivated him to work for the police.

The informant testified that he met defendant Swiney about six months prior to the breaking and entering. The informant was trying to work for the police on a drug sale with Swiney and his girlfriend. One day Swiney and the informant were driving through Milford when Swiney said he had thought about breaking into McMartin's because the side door looked easy to go through. Swiney and the informant met later at Swiney's house to discuss various plans for breaking into McMartin's. They drove past McMartin's again and discussed various ways to enter the building. The informant and Swiney met with defendant Zimmerman to discuss a plan for the breaking and entering. About one or two days prior to the breaking and entering, defendant Jones joined the group.

The informant told Swiney and Zimmerman that they would make $60,000 each from the breaking and entering. He assured them that the merchandise could be "fenced" the very same evening because he had a buyer in Rochester. The informant provided defendants with walkie talkies and said that he would drive the "get-away" car. The defendants got a torch and tanks for use in cutting the safe. The informant helped hook up the tanks and went with defendants to get a new tip for the torch. The informant also gave defendant Zimmerman step-by-step instructions on how to cut open the safe.

About two days prior to the breaking and entering, the informant called Officer Cremonte, told him where and when the break-in would occur and asked whether they could have officers available

for the arrest. The informant told Cremonte that he would be driving defendants in his van to McMartin's. The informant said that they had agreed that he would shut off the store's alarm because he knew the most about electronics. Officer Cremonte called the owner of the store and arranged to have the alarm shut off on the night of the crime.

On the night of the offense, the informant drove defendants to McMartin's and said he was going to disconnect the alarm. Instead, he walked a quarter mile down the road and stood in a restaurant parking lot. A little while later, he was picked up by some police officers. They waited until arrests were apparently made and then drove the informant back to his van.

I

DID THE TRIAL COURT CLEARLY ERR IN FINDING THAT THE INFORMANT ACTED AS AN AGENT OF THE POLICE?

The trial court did not clearly err in finding that the informant acted as an agent of the police. "When persons who are not law-enforcement officials act with official encouragement or assistance, they should be treated as government agents for purposes of the entrapment defense." *People v Stanley,* 68 Mich App 559, 564; 243 NW2d 684 (1976). There is very little law in Michigan as to what degree of "encouragement or assistance" is necessary for a finding that a person acted as a government agent. However, *People v Owczarzak,* 144 Mich App 65; 372 NW2d 683 (1985), provides some guidance.

In *Owczarzak,* a person decided on his own that he wanted to be a police informant. The police told him they did not need an informant, but this person nevertheless made arrangements to pur-

chase marijuana. He used tactics that could possibly constitute entrapment. In a second meeting with police, it was agreed that this person would become an informant. This Court held that the finding of no entrapment was not clearly erroneous because "[n]othing here suggests that the police were aware of the tactics [the informant] employed to arrange this purchase or were attempting to evade by indirection a possible entrapment defense." *Owczarzak, supra,* p 68. Moreover, the purpose of the entrapment defense was to deter reprehensible police conduct. This Court said that it could not see "how allowing a defense of entrapment to be based on actions of someone whom the police could not control could have any deterrent effect." *Owczarzak, supra,* p 69.

The people argue in the present case that the informant made the burglary plans on his own with no police involvement or control. Therefore, he was not an agent of the police. It is true that the informant and defendants had planned the breaking and entering by the time the informant called the police. In that respect, this case is similar to *Owczarzak.* However, unlike the informant in *Owczarzak,* the informant here had previously dealt with and worked for the police. In fact, Officer Cremonte said that they exercised a lot of control over the informant and that he had "worked out real well" for them. He had been an informant in approximately twenty other cases. The informant characterized his work with the police as undercover work. It is obvious that the informant had a long-term, ongoing relationship with the police. The fact that the informant was not given specific orders prior to his involvement in this case should not defeat a finding that he acted with "official encouragement or assistance." *Stanley, supra.*

The people cite federal cases from the Second and Ninth Circuits to support their argument that a person who has been an informer in a prior case is not necessarily an informer in a subsequent case. However, these cases are all distinguishable in that none of them involve the type of long-term relationship between the informer and the police that exists in the present case. The federal cases do not, therefore, support the people's position in the present case. The trial court did not err in finding that the informant was an agent of the police.

II

### DID THE TRIAL COURT CLEARLY ERR IN FINDING THAT DEFENDANTS WERE ENTRAPPED?

The trial court's finding of entrapment was not clearly erroneous. The burden is on the defendant to show entrapment by a preponderance of the evidence. *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977); *People v Graczyk,* 156 Mich App 632; 402 NW2d 60 (1986), lv den 428 Mich 887 (1987). The trial judge's decision will be upheld unless it is clearly erroneous. *D'Angelo, supra; People v Rowell,* 153 Mich App 99; 395 NW2d 253 (1986).

Michigan uses an objective test for entrapment that focuses on police conduct. The test examines whether the actions of the police were so reprehensible under the circumstances that, as a matter of public policy, the conviction should not stand. *People v Juarez,* 158 Mich App 66; 404 NW2d 222 (1987). The police conduct forbidden is that which would induce the commission of a crime by one not ready to commit it, regardless of the propensities of the particular person induced. *D'Angelo,*

*supra; Graczyk, supra.* In other words, defendant must show that police officers impermissibly manufactured or instigated a crime. *People v Smalls,* 139 Mich App 759; 362 NW2d 805 (1984).

In the present case, the informant, acting as an agent of the police, assured defendants that they would receive $60,000 each and that he had a buyer for the merchandise. He agreed to drive to the store and he provided walkie talkies. The informant took part in preparing the torch and the tanks used to cut the safe. The informant gave defendant Zimmerman detailed step-by-step instructions on how to cut open the safe. Also, it was the informant who was to turn off the alarm because he was the one who had knowledge of electronics. The facts support the trial court's finding that the informant's actions exceeded what would be necessary to aid the police. The informant's planning, organization and know-how induced the commission of this crime. The trial court's finding of entrapment was not clearly erroneous.

Affirmed.