PEOPLE v JAMIESON

Docket No. 92614. Submitted October 7, 1987, at Detroit. Decided May 2, 1988. Leave to appeal applied for.

Defendants, Stephen Jamieson, William Moore, Vincent McFadden, Gregory Union and James Neely, all Wayne County Jail guards, were charged in the Detroit Recorder's Court with delivery of cocaine. Following a consolidated hearing on defendants' claims of entrapment, the trial court, Michael F. Sapala, J., entered an order dismissing the charges, based on a finding of entrapment. The people appealed.

The Court of Appeals *held:*

The trial court did not clearly err in finding entrapment under the facts of this case. The police and the informant impermissibly manufactured or instigated the crimes for which defendants were charged. The defendants were entrapped as a matter of law.

Affirmed.

1. CRIMINAL LAW — DEFENSES — ENTRAPMENT — OBJECTIVE TEST.

Michigan has adopted the objective test to determine whether entrapment has occurred; the test focuses not on the particular defendant's predisposition to commit the crime charged, but on whether the actions of the police were so reprehensible under the circumstances that the court should refuse, as a matter of public policy, to permit a conviction to stand.

2. CRIMINAL LAW — DEFENSES — ENTRAPMENT.

The purpose of the entrapment defense is to deter unlawful police activities and preclude judicial approval of impermissible government conduct.

3. CRIMINAL LAW — DEFENSES — ENTRAPMENT — OBJECTIVE TEST.

The objective test of entrapment provides that entrapment has occurred when the government's agents' involvement in crimi-

REFERENCES

Am Jur 2d, Criminal Law §§ 202, 203, 206.

Am Jur 2d, Trial § 425.

Burden of proof as to entrapment defense—state cases. 52 ALR4th 775.

nal activities goes beyond the mere offering of such an opportunity and is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, regardless of the character or propensities of the particular person induced.

4. CRIMINAL LAW — DEFENSES — ENTRAPMENT — "TAKE-BACK" SALES.

The Court of Appeals has determined that a "take-back" sale is not entrapment as a matter of law.

5. CRIMINAL LAW — APPEAL — DEFENSES — ENTRAPMENT.

A trial court's determination on the issue of entrapment will not be disturbed on appeal unless such determination is clearly erroneous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Jamil Akhtar,* for Stephen Jamieson.

*John R. Minock,* for Gregory Union.

*Steven Fishman,* for William Moore.

*Felice V. Iafrate,* for James Neely.

*Benjamin Roth,* for Vincent McFadden.

Before: D. E. HOLBROOK, JR., P.J., and SHEPHERD and D. L. SULLIVAN,* JJ.

PER CURIAM. The prosecutor appeals from an order of Detroit Recorder's Court Judge Michael Sapala dismissing the drug charges against defendants, based on a finding of entrapment. We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendants, all Wayne County Jail guards, were charged with unlawful delivery of less than fifty grams of a controlled substance, a violation of MCL 333.7401; MSA 14.15(7401). After a consolidated pretrial evidentiary hearing on defendants' claims of entrapment, Judge Sapala dismissed the charges against the defendants, finding each had been entrapped.

The following facts were established at the entrapment hearing. Some time in September, 1985, Sergeant Kent Booth of the Wayne County Sheriff's Department was contacted by a juvenile inmate at the Wayne County Jail. The juvenile provided information to Sergeant Booth concerning corrections officers bringing narcotics to inmates of the facility. No specific officers or guards were implicated. Sergeant Booth conferred with the jail administrator and representatives of the Wayne County Prosecutor's Office at which time Sergeant Booth was given "ten days" to devise a plan to apprehend the guards participating in these activities. The juvenile agreed to participate in the operation for a thirty-day reduction in his sentence.

After discussing some alternative plans, a "reverse sting" or "take back" sale operation was chosen. Sergeant Booth went to the DEA task force and obtained a quantity of cocaine and money. The juvenile was to approach a guard and request that he bring narcotics into the jail. Sergeant Booth would deliver the drugs and money to an undercover police officer who would deliver these items to the particular guard who would in turn deliver the items to the juvenile inside the jail. The juvenile would then return the drugs and money to Sergeant Booth. Sergeant Booth did not instruct the juvenile as to a particular guard to approach. The juvenile was allowed to approach

the guards at his discretion. As a result of these operations, the defendants were arrested and charged with delivery of cocaine.

The prosecution argues that the lower court erred in finding entrapment under the facts of this case. We disagree.

"Michigan has been at the forefront in protecting persons from being convicted of a crime which was instigated, induced or manufactured by a government agent." *People v White,* 411 Mich 366, 387; 308 NW2d 128 (1981). Our Supreme Court has renounced the subjective view of entrapment followed by the United States Supreme Court and adopted the objective test defined in Justice Stewart's dissent in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). The objective test focuses not upon the particular defendant's predisposition to commit the crime charged, but, rather, on "whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand." *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973). The purpose of the entrapment defense is to deter unlawful police activities and preclude judicial approval of impermissible government conduct. *People v D'Angelo,* 401 Mich 167, 172-173; 257 NW2d 655 (1977).

Justice Stewart defined the objective test as follows:

[W]hen the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the

Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice. [*United States v Russell, supra* at 445.]

The first Michigan case to deal with the propriety of the government's prosecuting the distribution of narcotics it has supplied was *People v Stanley,* 68 Mich App 559; 243 NW2d 684 (1976). In *Stanley,* this Court found entrapment as a matter of law where a defendant was charged as a result of a government "take-back" sale.

There can be no doubt that if defendant obtained heroin from Upton, a police informant, and later sold the same heroin back to Upton, his conviction for that sale would be invalid. It is difficult to conceive of a clearer instance of manufactured crime, of "police conduct . . . [that] falls below standards, to which common feelings respond, for the proper use of governmental power". *Sherman v United States,* 356 US 369, 382; 78 S Ct 819; 2 L Ed 2d 848 (1958) (concurring opinion by Justice Frankfurter). [*Stanley, supra* at 564.]

However, other panels of this Court considering the issue after *Stanley* have refused to follow a per se rule in cases involving government "take-back" sales. See *People v Roy,* 80 Mich App 714; 265 NW2d 20 (1978); *People v Duke,* 87 Mich App 618; 274 NW2d 856 (1978); *People v Forrest,* 159 Mich App 329; 406 NW2d 290 (1987). In *Roy* and *Duke,* both involving deliveries of narcotics by prison employees to inmates, this Court held that entrapment had not occurred.

In *Roy,* a Jackson prison inmate turned informant told an agent of the Michigan Attorney General's Office that drugs were being smuggled

into the prison via another identified inmate who had a contact with an unidentified prison employee. An inmate who had a drug seller outside of the prison would pass on the seller's phone number to the inmate who was in contact with the defendant prison employee who would then contact the seller and arrange to bring the drugs into the prison. The Attorney General agent gave the inmate-informant a phone number to pass along. A few days later the defendant contacted the agent and set up the exchange. In finding no entrapment, this Court stated:

> Roy, however, did not operate unless an inmate provided him with an outside source of drugs. To obtain the required evidence, therefore, it was necessary for the police to provide the outside contact. But the method of operation was not suggested by the police. The plan originated with Roy and Berrier. Nor did the police use any tactics calculated to induce the defendants to commit a crime they were not otherwise ready to commit. They merely followed instructions given them by Berrier. [*Id.* at 719-720.]

Similarly in *Duke,* an inmate-informant cooperated with police in apprehending a Jackson prison guard involved in a drug scheme. In that case, several other inmates, who thought that the informant had outside drug connections, attempted to pressure the informant into arranging a transfer of drugs to a cooperating guard. The defendant guard contacted a police officer posing as the informant's wife to arrange picking up drugs provided by the government. The defendant later arrived at the police officer's hotel room, identified himself, and left with the drugs.

In finding that no entrapment had occurred, the *Duke* panel reasoned:

The present case, however, involves neither an appeal to defendant's sympathies, nor a "takeback" sale. Rather, the present case involves a situation where the police, in response to orders from the persons involved in the criminal enterprise, delivered a quantity of heroin to defendant. Although the fact that the drugs were provided by the government in this case is certainly one factor to consider, that factor must be considered along with all the other facts of the case.

We now hold that the trial judge erred in ruling that entrapment had occurred. The record supports the conclusion that the idea for the crime did not originate with the police. The police had no role in determining how the transfer of the drugs would be carried out. The police were merely responding to the orders of those who had conceived the crime. [*Id.* at 623.]

Thus, this Court has determined that a "takeback" sale is not entrapment as a matter of law. The trial court must determine, on the particular facts presented, whether entrapment has occurred. *Roy, supra* at 719. Once the trial court's decision is reached, the findings will not be disturbed on review unless they are clearly erroneous. *People v D'Angelo, supra* at 183.

In an extensive written opinion, the trial court concluded that entrapment had occurred in this case. The court found particularly reprehensible the actions of the police in allowing a teenage convicted felon the unfettered power to orchestrate the entire operation—from selecting which guards to approach, to setting up the drug exchanges. In addition to the utter lack of supervision, the trial court was troubled by the actions of police in using a juvenile in this potentially dangerous scheme and in introducing actual drugs into the jail.

We cannot conclude that the trial court's decision was clearly erroneous. Unlike in *Roy* and

*Duke,* here the police not only supplied the drugs which gave rise to the crime, but also, through the juvenile, directed the entire operation. The defendants were acting at the juvenile's direction rather than the juvenile and the police acting at defendants' directions. The police and their informant impermissibly manufactured or instigated the crimes for which defendants were charged. Therefore we agree that defendants were entrapped as a matter of law. Additionally, we too are bothered by police use of this informant—because of his age, criminal status, and motivation—and the lack of supervision by police over the entire operation.

Affirmed.