## PEOPLE v KOLASKI

Docket No. 81519. Submitted October 1, 1985, at Grand Rapids.—
Decided December 16, 1985. Leave to appeal applied for.

Defendant, Henry L. Kolaski, was a passenger in a van driven by
Debbie James. James was arrested by Michigan State Police
officers for driving while intoxicated and taken to a state police
post. After the patrol car left, defendant drove the van and was
arrested for driving while intoxicated by an officer of the
Cheboygan County Sheriff's Department. Defendant was
charged with operating a motor vehicle under the influence of
intoxicating liquor, third offense. The Cheboygan Circuit Court,
Robert C. Livo, J., dismissed the charge after a hearing on
defendant's motion to dismiss based upon the defense of entrap-
ment. The people appeal by leave granted. *Held:*

1. Entrapment is an issue to be determined by the trial court.
The trial court is required to make specific findings of fact
which will be reviewed under the clearly erroneous standard.
In this case, the Court of Appeals accepted the trial court's
findings of fact, but reversed the finding of entrapment, which
the trial court based upon the officers' duty to prevent crime,
because it was erroneous as a matter of law.

2. Although state police officers have a general duty to
prevent crime, there is no legal authority which would have
imposed a duty upon the officers to arrest or detain defendant
in order to prevent him from operating the van. Similarly,
there is no legal authority which would have imposed a duty
upon them to provide a ride to defendant, who appeared to be
intoxicated.

3. Although the officers' conduct in this case may be de-
scribed as unaccommodating or careless, it was not unlawful or
reprehensible and it did not constitute entrapment as a matter
of law.

4. Entrapment has not been found where the record supports
the conclusion that the idea for the crime did not originate

References
Am Jur 2d, Criminal Law §§ 202-206.
See the annotations in the ALR3d/4th Quick Index under Entrap-
ment; Police.

with the police. The record in this case when viewed in its entirety, supports a conclusion that the idea for the crime, *i.e.*, defendant's operation of James's van while intoxicated, did not originate with the officers.

5. The trial court is required to evaluate police conduct in relation to a hypothetical defendant, *i.e.*, a person not ready and willing to commit the crime charged. In this case, the officers' conduct was not sufficiently provocative to induce a normal law-abiding citizen to drive away with the van, because a reasonable person would have returned the keys to the van in accordance with the officers' request.

Reversed and remanded for reinstatement of the charges.

MacKENZIE, J., dissented. She would hold that the trial court did not clearly err in concluding that entrapment occurred since the record supported a finding that the officers instigated a crime which defendant would not otherwise have committed. She would affirm.

### OPINION OF THE COURT

1. CRIMINAL LAW — ENTRAPMENT — QUESTION OF LAW.

   Entrapment is an issue to be determined by the trial court; the trial court. is required to make specific findings of fact which will be subject to appellate review under the clearly erroneous standard.

2. CRIMINAL LAW — POLICE OFFICERS — DUTY TO PREVENT CRIME.

   Although state police officers have a general duty to prevent crime, they are under no legal duty to arrest or detain a person who appears to be intoxicated to prevent him or her from operating a motor vehicle; similarly, they are under no legal duty. to provide a ride to a person who appears to be intoxicated.

3. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST.

   Michigan has adopted the objective test of entrapment, the purpose of which is to prohibit unlawful governmental activities in instigating crime, in order to avoid the implication. that the judiciary approves of impermissible governmental activity.

4. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT — IDEA FOR CRIME.

   Entrapment is not a defense when the record supports a conclusion that the idea for the crime did not originate with the police.

5. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT.

   A trial judge, in ruling on a question of entrapment, is required

to consider police conduct in relation to a hypothetical defendant, *i.e.,* one who is not ready and willing to commit a crime.

DISSENT BY MACKENZIE, J.

6. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT.

*The real inquiry for a trial court, when the defense of entrapment is raised, is whether the actions of the police were so reprehensible under the circumstances that the court should refuse, as a matter of public policy, to permit a conviction to stand; or, stated another way, whether the police acted in a manner likely to instigate a criminal offense.*

7. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT.

*State police officers are under no legal duty to arrest or detain a person who appears to be intoxicated to prevent him or her from operating a motor vehicle or to provide him or her a ride; however, they have a duty to assure that an apparently intoxicated person, who would otherwise be stranded, is not forced, under the circumstances, to drive a vehicle.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph P. Kwiatkowski,* Prosecuting Attorney, *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender, (by *Rolf E. Berg),* for defendant on appeal.

Before: DANHOF, C.J., and MACKENZIE and J. L. BANKS,* JJ.

DANHOF, C.J. The people appeal by leave granted from the trial court's order of September 10, 1984, dismissing a charge of operating a motor vehicle under the influence of intoxicating liquor, third offense, MCL 257.625; MSA 9.2325, and two related charges. We reverse the trial court's finding of entrapment, vacate the order dismissing this case, and remand for reinstatement of the charges.

On June 6, 1984, at approximately 2:00 a.m., two

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan State Police officers stopped a van, driven by Debbie James, in which defendant was a passenger. Trooper Schneider arrested James for driving while intoxicated, took her to the patrol car, and informed her that she could have the van towed at her expense or secured and left at the scene. She decided to leave it on the rural highway, south of Cheboygan and approximately three miles from the Dodds's house, her intended destination. When another officer asked for identification, defendant stated that his license was suspended, and he presented other proof of identification. Defendant looked intoxicated but was not arrested. Defendant was then told of James's arrest and her decision to leave the van. Defendant asked the officers for a ride into town or to a telephone, but they refused. At the officers' request, defendant secured the van. He gave James her purse, but apparently kept the keys. After the patrol car left, defendant drove the van and, as he pulled into the Dodds's driveway, was arrested for drunk driving by an officer of the Cheboygan County Sheriff's Department.

The testimony of James and defendant conflicted with that of Trooper Schneider over whether James had told defendant to "sit tight" while James called someone to get the van. Another conflict arose from James's testimony claiming that a radio transmission, "we got him", was received by the patrol car on the way to the State Police post. Trooper Schneider denied receiving that communication and denied making statements concerning defendant's arrest on the return trip.

After an evidentiary hearing on defendant's motion to dismiss, the trial court concluded that defendant had been entrapped, making the following fact findings and reasoning:

"Gentlemen, on the question of entrapment on the motion to dismiss, I find it a very interesting question. I'll say that I would agree with the defense on the point that the police have a continuing duty to prevent crime, and they may also have a duty to generally assist people, but *I don't rest my decision on that duty. I rest it on their duty to prevent crime.*

"Now, in this particular factual setting, according to the evidence as I understand it, the police left a drunk defendant—Mr. Kolaski—who they knew didn't have a driver's license since it had been suspended, on a public highway with a vehicle; and, of course, there's a dispute as to whether or not they knew the keys were there at 2:15 in the morning.

"The test in the case of People versus Killian, 117 Michigan Appeals 220 at page 220 *(sic)*, is whether or not the police conduct was likely to create or instigate a crime. Well, there's been some testimony about the radio, and I don't find it necessary to rule on that in order to reach a conclusion; and besides that, it would seem to me that that issue is somewhat ancillary to the basic question, which is: Was the conduct reprehensible. Well, whether they talked on the radio or what they said—I mean, if there was some conspiracy, I would obviously consider that reprehensible.

"I don't find any such conspiracy, but I do find that, first of all, at the scene of the stop, the policy knew that or should have known, according to the testimony— Number 1: that the defendant was intoxicated and a passenger in the vehicle which they'd stopped and arrested the driver of the vehicle, who is Debbie James. They knew the car or her van was left at the scene. They knew that defendant's driver's license had been suspended and he was intoxicated and his judgment impaired. They thought he had given the keys back to Miss James but, in fact, the keys were there; and I think therein lies the rub.

"The police took control of the vehicle and the keys when they—Number 1: announced to Debbie James what her options were with regard to disposition of her vehicle. They'll either secure it at the scene or they'll call a wrecker to haul it away. Well, as a matter of fact, the vehicle was not secured in the sense that the keys

to it were left with Mr. Kolaski, and they further
permitted the exchange of the purse and the keys
between defendant directly and the witness James;
therefore, they placed the keys in the status which
permitted them to get into defendant's hands, in effect.

"Certainly the owner of the car, Mrs. James, had no
longer—or any control over the vehicle. She was under
arrest and there was an obvious and apparent risk and
a danger to the public to allow Mr. Kolaski to drive the
car. And I'm not saying that the officers intended that
or approved of that in any way, but I think the bottom
line is that if it was wrong—if it's wrong for Mrs.
James to drive drunk or anyone to drive drunk, it
certainly also applies to Mr. Kolaski; and in his condi-
tion, it's not surprising that he would have opted to
drive the car rather than choose the more rational and
safe alternative of walking.

"I would make another point here. I don't consider
the distances involved, from the standpoint of whether
he could have walked to the Dodd residence, particu-
larly significant, because his judgment was impaired. It
could have been that it was fifty miles out in the
wilderness, and then it would obviously be, in that case,
an even stronger case where some determination should
have been made about how defendant planned to get
home. I think that the police should have verified that
plus where the keys were before they left the scene.

"For all of those reasons, it's my considered opinion
that the defense of entrapment is appropriately raised
in this case, and I would dismiss the case on that basis.
The motion is granted." (Emphasis added.)

Entrapment is an issue to be determined by the
trial court. *People v D'Angelo,* 401 Mich 167, 173-
174; 257 NW2d 655 (1977). The trial court is
required to make specific findings of fact which
will be reviewed under the clearly erroneous stan-
dard. *D'Angelo, supra,* p 183. In this case, we
accept the trial court's findings of fact but reverse
the finding of entrapment which the trial court
based upon the officers' duty to prevent crime,
because it is erroneous as a matter of law.

Although all may agree with the premise that State Police officers have a general duty to prevent crime, the trial court cited no legal authority, and we find none, which would impose a duty upon the officers to arrest or detain defendant in order to prevent him from operating the van. See MCL 28.6; MSA 4.436. Similarly, no legal authority is provided which would impose upon State Police officers a duty to provide a ride to an individual observed in an intoxicated condition.

Michigan has adopted the objective test of entrapment with express approval given to the minority view articulated by Justices Roberts, Frankfurter, and Stewart of the United States Supreme Court and the minority view articulated by Justices MARSTON and CAMPBELL of the Supreme Court. *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973). The *Turner* Court quoted extensively from Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423, 441-445; 93 S Ct 1637; 36 L Ed 2d 366 (1973), because it persuasively explained the rationale for the test. *Turner, supra,* p 19. That explanation provides in pertinent part:

"But when the agents' involvement in a criminal activity goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice." *Turner, supra,* p 21.

In short, the purpose of the objective test is to prohibit unlawful governmental activities in insti-

gating crime in order to avoid the implication that the judiciary approves of impermissible governmental activity. *Turner, supra,* p 20.

In *People v Sinclair,* 387 Mich 91, 119-120; 194 NW2d 878 (1972), the Court stated that "the basis of the entrapment offense is that the methods used by the police are repugnant to fair play and justice". In *Turner, supra,* p 22, the Court criticized the subjective test because it failed "to focus on the real concern in these cases—whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter of public policy, to permit a conviction to stand". In *D'Angelo, supra,* p 179, the Court stated that the defense of entrapment is "to present facts collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by enforcement officers in order to get a conviction".

A panel of this Court has stated:

> "*Turner* and similar cases should not be read as indicating that a defense of entrapment is available any time the police or the agents do something which can be characterized as 'reprehensible'. The defense of entrapment presents a conflict between two significant state interests: the interest of the state in deterring police misconduct and the interest of the state in punishing criminals. The *Turner* Court resolved this conflict by striking a balance between the two conflicting interests. The balance struck is embodied in the test stated by Justice Stewart in his *Russell* dissent and previously quoted. *Turner* and subsequent cases show that the defense of entrapment is available only where the police or their agents manufactured the crime at issue by conduct likely, when objectively considered, to induce or instigate the commission of the crime by a person not ready and willing to commit it." *People v David L Crawford,* 143 Mich App 348, 352-353; 372 NW2d 550 (1985).

Although the officers' conduct in this case may be described as unaccommodating or careless, it is not unlawful or reprehensible conduct and it does not constitute entrapment as a matter of law. Cases in which entrapment has been found have typically concerned tactics employed by under-cover agents, *Crawford, supra,* or instances in which police have pressured the defendant into committing the crime, *People v Duis,* 81 Mich App 698, 703; 265 NW2d 794 (1978), or instances in which the police have exploited the defendant's friendship or sympathy, *People v Soper,* 57 Mich App 677, 679; 226 NW2d 691 (1975), *lv den* 394 Mich 822 (1975). Those factual circumstances are not present in this case. Entrapment has not been found where the record supports the conclusion that the idea for the crime did not originate with the police. *People v Duke,* 87 Mich App 618, 623; 274 NW2d 856 (1978). In its oral findings, the trial court declined to say that the officers intended to allow or to approve defendant's use of James's van. In our view, the record, when viewed in its entirety, supports a conclusion that the idea for the crime *(i.e.,* defendant's operation of James's van while intoxicated) did not originate with the officers.

Moreover, the trial court is required to evaluate police conduct in relation to a hypothetical defendant, that is, a person "not ready and willing to commit" the crime charged. *People v Zeegers,* 61 Mich App 546, 550; 233 NW2d 76 (1975). In this case, the officers' conduct was not sufficiently provocative to induce a normal law-abiding citizen to drive away with the van, because a reasonable person would have returned the keys to the van in accordance with the officers' request.

The trial court's finding that no conspiracy existed between the officers of the Michigan State

Police and the Cheboygan County Sheriff's Department is significant. A finding of conspiracy would have presented an altogether different issue which we are not now required to decide.

Reversed and remanded for proceedings consistent with this opinion.

J. L. BANKS, J., concurred.

MacKENZIE, J. *(dissenting).* I dissent. I am not persuaded that the trial court's finding of entrapment on these facts was clearly erroneous.

The record in this case shows that two state police troopers stopped James's vehicle, arrested her for drunk driving, and placed her in the patrol car. Defendant was obviously intoxicated and informed the troopers that his driver's license had been suspended. Inexplicably, rather than securing James's van themselves or asking James to do so, the troopers gave the keys to defendant and asked him to get James's purse and secure the vehicle. The troopers never saw defendant return the keys and never demanded proof of their return, the officers, however, "thought" that defendant gave the keys to James. At 2:15 a.m. in rural Cheboygan county, the troopers left defendant intoxicated alongside the road with the keys and the van. Defendant was subsequently arrested for driving James's van under the influence of intoxicating liquor.

The majority condemns the trial court's finding that the troopers had a duty to prevent crime by verifying the location of the keys which they had given defendant. I agree with the majority that the troopers had no duty to detain defendant or to offer him a ride. However, it seems clear that they did have a duty to assure that James's vehicle would not be driven away. In *Gallagher v Secre-*

*tary of State (On Rehearing),* 59 Mich App 269, 274; 229 NW2d 410 (1975), *lv den* 394 Mich 818 (1975), for example, where the appellee was arrested for driving under the influence of intoxicating liquor, this Court stated:

"We hold the officer could prevent appellee's further driving by commandeering the keys to his vehicle. We are not disposed to quibble over whether such a procedure would or would not be an 'arrest'. Common sense demands that if a peace officer comes upon a stopped car, the driver of which he has seen commit no offense, and yet which driver is manifestly unable to drive safely for illness or whatever reason, he must be allowed to restrain that person's continued driving. Any arrest that may be made subsequently can abide complying with legal requirements. In so holding we think we vest no police state powers in a peace officer and still protect others on the highway."

In my opinion, the policy behind this Court's holding in *Gallagher* applies with equal force on these facts. See also 1979 AC, R 28.1458. I do not agree with the majority, therefore, that the trial court's perception that the troopers had a duty to prevent crime by verifying the location of the keys was clearly erroneous.

In any event, the existence of a legal duty is wholly collateral to the decision reached in this case. The real inquiry, recognized by the trial court, is whether the actions of the police were so reprehensible under the circumstances that the court should refuse, as a matter of public policy, to permit a conviction to stand, *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977), or, stated another way, whether the police acted in a manner likely to instigate or create a criminal offense, *People v Killian,* 117 Mich App 220, 222; 323 NW2d 660 (1982), *lv den* 414 Mich 944 (1982).

Courts of other states have found the entrapment defense to be available in an appropriate drunk driving case. See, *e.g., Noles v State,* 164 Ga App 191; 296 SE2d 768 (1982); *State v Bisson,* 491 A2d 544 (Me, 1985); *State v Vanderlas,* 483 A2d 263 (Vt, 1984).

I recognize that the instant case is distinguishable from the overwhelming majority of entrapment cases. There was no undercover operation directed at defendant nor did the police actively seek defendant out. *Cf. People v White,* 411 Mich 366; 308 NW2d 128 (1981); *Killian, supra.* The police did not prey upon the sympathies or friendships of the defendant, as in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), and *People v Brenda E Crawford,* 121 Mich App 306; 328 NW2d 377 (1982), nor did they actively participate in the offense as in *White, supra.* In short, it is difficult to equate the police conduct herein with the active ''manufacturing'' or ''instigating'' of a crime which is typically characteristic of entrapment.

Nevertheless, I am left with the inescapable conclusion that the trial court did not clearly err in concluding that entrapment occurred. Prior to the intervention of the police, defendant was merely a passenger in James's van and was neither ready nor willing to commit the charged offense. It was only after the police left defendant stranded that he resorted to driving while intoxicated. Moreover, the failure of the police to properly secure the van or insure that defendant would not drive the van provided defendant with the instrumentality to commit the offense. Finally, the refusal of the police to arrange transportation for defendant was particularly irresponsible. In effect, defendant was induced by this refusal to commit the crime.

The instant case is distinguishable from those

situations where the police merely afford the defendant an opportunity to commit a crime. In *People v Reynolds,* 139 Mich App 471; 362 NW2d 763 (1984), the police did no more than supply an underage agent who made illegal liquor purchases. Similarly, in *People v Alford,* 405 Mich 570; 275 NW2d 484 (1979), an undercover officer merely arrived at the defendant's door and asked to purchase drugs. In both cases, the police only provided the means to commit the offense; the actual commission was a conscious and willing act by the defendants. In contrast, in this case the police left defendant isolated at 2:15 a.m. with no other means of transportation. In essence, the element of choice was absent. Defendant was effectively forced to drive the van or remain in a situation which was at the least unsettling and could well have become dangerous. Not only did the officers provide him with a means, but they also left him with little choice but to utilize those means. In my view, these factors sufficiently establish that the officers induced or instigated the crime which the defendant would not otherwise have committed. Accordingly, I would affirm.